**Dyeatra Ann CARTER, Petitioner,**

v.

**Norman CARLSON, Director U. S. Bureau of Prisons, U. S. Parole Commission, and G. H. Sizer, Warden, Federal Correction Institute, Alderson, West Virginia, Respondents.**

Civ. A. No. 82–5051.

United States District Court,
S. D. West Virginia,
Beckley Division.

Aug. 23, 1982.

Dyeatra Ann Carter, pro se.

Paige A. Winck, Asst. U. S. Atty., Charleston, W. Va., for respondents.

## MEMORANDUM ORDER

KIDD, District Judge.

The petitioner seeks extraordinary relief under the provisions of Title 28, *United States Code*, Section 1361 or 2241, as a consequence of alleged actions or omissions of the respondents concerning decisions made during the petitioner's confinement.

The petitioner is an inmate serving a fifteen (15) year sentence at FCI Alderson, West Virginia, as a consequence of a 1977 jury verdict finding her guilty of acts prohibited under 18 U.S.C. § 1962(c) & (d) (RICO Statute), 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 843(b). Various appellate pro-

ceedings resulted in reduction of the 82 year sentence which was originally imposed to the 15 year sentence which the petitioner is now serving. *See U. S. v. Sutton*, 642 F.2d 1001 (6th Cir. 1980) (*en banc*). The petitioner has served some 45 months toward satisfaction of the 15 year sentence.

The record reflects that the severity of the petitioner's offense has been rated as "Greatest I". 28 C.F.R. § 2.20. It appears that her presumptive parole date has been set as August 21, 1983, at which time she would have served one-third of her sentence. Petitioner's "Exhibit C". Her salient factor score in November 1981 was 10.[1]

The petitioner maintains that she has an exemplary institutional record, including no incident reports; indeed, the documents she has annexed to her petition reflect extremely positive institutional adjustment.

The complaint centers upon what the petitioner characterizes as "arbitrary and capricious" conduct by the parole commission toward the petitioner and denial of equal protection and due process of law. The particulars upon which these claims are based include:

1. Not being permitted to participate in the institution's "T.I.M.E. Expectant Mother's Program";

2. being designated and maintained as a CMC (Central Monitoring Case) prisoner;

3. the parole board determined that the drug activity giving rise to the conviction involved 50 to 1000 grams of pure heroin when no record exists to support such a determination; this quantity and purity was the basis for the "Greatest I" classification;

4. disparate treatment of the petitioner and co-defendants;

5. double jeopardy in that the Bureau of Prisons is imposing its brand of punishment on top of the sentence which the petitioner is serving;

6. related to one or more of the above, denial of furlough status.

---

1. A "Greatest I" rating and a salient factor score of 10 carries a parole prognosis of 40 to 52 months. 28 C.F.R. § 2.20. However, as noted in the regulations, the "Adult Guidelines

for Parole Decision Making" are an attempt to promote consistency in parole decision making and the "time ranges are merely guidelines" and are not inflexible periods.

The respondents have answered and filed their separate "Motion to Dismiss" and a "Motion for Summary Judgment." The Court will discuss the meritorious issues raised by the pleadings whether raised by the motion to dismiss or motion for summary judgment. The entire record in this matter has been considered carefully and the Court is of the opinion that there are no fact issues which require development and that the respondents, and each of them, are entitled to judgment as a matter of law.

## DISCUSSION

On July 17, 1981, the petitioner filed an "Inmate Request" for permission to participate in the institutional program designated as T.I.M.E. (The Intimacy of Motherhood Embraced) which was:

"... developed for eligible Alderson inmates to provide a community based facility for expectant mothers to prepare for their child's delivery, initiate mother-child bonds and to develop appropriate child placement plans if needed." (Ball Affidavit).

See also, "Attachment 4" to respondents' Memorandum of Law ..." at 4 (hereinafter referred to only by attachment number). Her request was denied by Central Inmate Monitoring (C.I.M.).[2] (See petitioner's "Exhibit B") because petitioner had no probable parole release date and also as a consequence of the severity of the offense committed by the petitioner. (Ball Affidavit at 8).

The C.I.M.N. 1981 Operational Manual requires that a C.M.C. inmate obtain a clearance before being permitted to participate in activities and community programs such as the T.I.M.E. program. Attachment

1 at 5. As previously noted, petitioner Carter's request for clearance was denied, with reasons stated, and she was thus not eligible to participate in the T.I.M.E. program.[3] The T.I.M.E. program was designed as a benefit and privilege and is not a creature of statute or regulation.[4]

The petitioner here argues that she was denied T.I.M.E. participation as a consequence of being wrongly designated as a CMC inmate. She then says the CMC classification was improper, and arbitrary and capricious, because she should not have been categorized as being in sophisticated criminal activity nor one receiving broad publicity nor as one properly fitting the "separation" category.

▮ The "sophisticated criminal activity" designation was made because of the RICO conviction. Petitioner's "Exhibit D". A reading of U.S. v. Sutton, supra, leaves little doubt that the operation in which the petitioner was involved was indeed "sophisticated" within the meaning of C.I.M.N. manual and her case appears to have received a great deal of publicity. While the petitioner may not have masterminded the offenses committed or even been a significant factor in the vast operation leading to many convictions, the jury, by convicting, found that she was "involved" in the crimes within the meaning of the CMC category. The Ball Affidavit discloses that a RICO conviction "automatically requires classification as a sophisticated offender" and this Court, without finding authority for that proposition, would agree due to the very nature of the activity that RICO is designed to prohibit. The reasons for considering factors such as crime sophistication and publicity when making institutional or ad-

---

**2.** Central Inmate Monitoring Network (C.I.M.N.) is a system designed to allow the Bureau of Prisons to provide maximum societal security while at the same time controlling "... the transfer and community activities of certain inmates who present special needs for management." There are a number of reasons for classification of a person as a Central Monitoring Case, including such classification for inmates who were involved in sophisticated criminal activity or who received broad publicity. Attachment 1 to respondents' "Memorandum

of Law ..." at 2–3. As can be seen in petitioner's "Exhibit D", petitioner received CMC classification for the above reasons as well as fitting a so-called "separation category."

**3.** The reason a C.M.C. clearance must be obtained for the T.I.M.E. program is because the T.I.M.E. program involves community-based residence before the child is born.

**4.** 28 C.F.R. §§ 551.20, 551.22 & 551.24 govern the required policy for a pregnant inmate.

ministrative decisions are obvious and reasonable.

While affiant Ball adequately explains the CMC category of "Separation", she does not provide any insight into how petitioner Carter fits this category; nor is there any fact-based explanation for the need to separate the petitioner from the Alderson population or any person. Accepting the petitioner's statements as true, and finding that there is no reason to categorize the petitioner as needing separation, the Court is not of the opinion that the petitioner has suffered from a constitutional wrong or has been the victim of conduct sufficient to warrant relief; "separation" aside, there is ample reason for CMC designation and treatment.

█ CMC classification has also resulted in the denial of furloughs to petitioner, as well as denial of privileges such as work-release, placement in a community treatment center (CTC) and the opportunity for early parole.

█ The discretion to permit a federal prisoner to participate in furlough programs has been created by 18 U.S.C. § 4082. This section authorizes an inmate to be absent from the designated institution for certain periods and under prescribed conditions when the Attorney General finds "... there is reasonable cause to believe [the inmate] will honor his trust." Thus, it is for the Attorney General, or his delegate, to make furlough, work release or CTC decisions and not for this Court. *U. S. v. Huss*, 520 F.2d 598 (2nd Cir. 1975); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975). And, it does not appear that this discretion has been abused in this case.

Finally, reading of this record and the C.I.M.N. manual only reflect that a CMC inmate might have a more difficult task in obtaining the privileges noted and not that CMC status "preclude(s) eligibility" for the privileges.

Comparison of furlough privileges granted to co-defendants reflects no abusive disparagement.

The Court is of the opinion that the policies, purposes and procedure relating to various inmate privileges have not been applied to this petitioner in an arbitrary or capricious manner.

█ The only issue raised by the petitioner which causes the Court much concern is the finding, by the Parole Commission, that the petitioner "had a managerial interest in a drug trafficking operation involving more than 50 grams, but less than 1,000 grams of pure heroin." Petitioner's "Exhibit C". Such a finding, when combined with petitioner's salient factor score of 10 (very good parole prognosis) dictates, under 28 C.F.R. § 2.20 schedules, that the petitioner's offense severity be rated "Greatest I", meaning that 40 to 52 months are customarily served before such a prisoner is released on parole. The government argues that this rating is of no consequence since the "petitioner's parole date is the minimum prescribed by law".[5] Respondents' "Memorandum ..." at 2. Therefore, the respondents say no matter what rating is given to the petitioner's offense behavior or what number is assigned as a salient factor score, the petitioner must serve a period of time greater than the 40–52 month customary range.

The respondents are absolutely correct ___ it makes no difference in this case what grid guideline is assigned, the petitioner must serve a minimum of 60 months.

The Court notes that the "Adult Guidelines for Parole Decision Making" are just that, "Merely guidelines"[6] and "... mitigating or aggravating circumstances ... may justify a decision or a severity rating different from that listed".[7] However, it may be more accurate to say that when a

---

**5.** The petitioner's current sentence is 15 years. With regard to parole eligibility the Court assumes, based not only upon counsel's statement but also based upon petitioner's representations, that the petitioner was sentenced under 18 U.S.C. § 4205(a) (1982 Cum.Supp.) thus making her eligible for parole after serving at least one-third of her 15 year sentence.

**6.** 28 C.F.R. § 2.20(c).

**7.** 28 C.F.R. § 2.20(d).

person is sentenced under 18 U.S.C. § 4205(a) and one-third of that sentence is a longer period of time range reflected in the guidelines, the guidelines do not apply because they contain no factor regarding the sentence *actually* imposed.

While it does appear that the finding of quantity and purity of heroin is a rather mysterious finding, and it further appears that such a finding is the basis for the "Greatest I" assignment, there is no evidence that the petitioner has suffered harm or prejudice as a result of this rating.

Both parties rely upon the case of *Pugliese v. Nelson*, 617 F.2d 916 (2nd Cir. 1980) in support of their respective positions regarding the issue of prison assignment and classification and due process protection.[8] In short, the Second Circuit ruled that such constitutional protection did not attach to such administrative decisions as CMC classification, furloughs, ... Benefits and privileges as are at stake here do not receive protections often afforded in judicial and quasi-judicial proceedings.

In her petition the petitioner mentions the numerous and influential people who support her efforts to obtain furlough privileges. At another point, in her "Conclusion", Carter lists 16 points which she finds confusing and which tend to point to inconsistencies between her particular situation and administrative conduct toward her. The exhibits tendered in this case, consisting largely of institutional records, focus on the extremely positive institutional adjustment made by the petitioner. The affidavit of Case Manager Gail W. Ball, filed at the respondents' request, contains further evidence of the exceptional progress that the petitioner has made since being incarcerated. The petitioner's pleadings and argument are indicative of her motivation and intelligence. However, none of these factors are relevant in this proceeding; the court's function is limited to determining whether the petitioner has been dealt with fairly ___ that is, constitutionally and in a manner which is free of arbitrary and capricious treatment.

Finally, the Court is not in a position to determine whether the particular classification and treatment which aggrieves the petitioner is rehabilitative, or whether this petitioner's classification and treatment are for the greater good. The Court is, however, in a position to say that treatment and classification of this petitioner is neither unconstitutional nor arbitrary and capricious.

The Court has neither addressed nor determined whether an actionable claim has been stated against any particular respondent. However, for the reasons contained herein, and other reasons apparent from the record, the Court is of the opinion that there are no other facts or documents which would aid the Court in rendering judgment, that the current record reflects no genuine issue as to any material fact, and that the respondents are entitled to judgment as a matter of law.

Accordingly, the respondent's motion for summary judgment is hereby GRANTED and judgment shall be entered accordingly.

The Clerk is hereby directed to mail certified copies of this Order to counsel of record and to the petitioner herein.

It is so ORDERED.

---

**8.** Petitioner relies upon the district court case which the Second Circuit found wanting and reversed. *See Pugliese v. Nelson*, 472 F.Supp. 992 (D.C.Conn.1979).