**Reginald L. LEE, Plaintiff,**

v.

**Norman A. CARLSON, et al.,
Defendants.**

Civ. A. No. 82–0404.

United States District Court,
M.D. Pennsylvania.

March 28, 1983.

Reginald L. Lee, pro se.

David Shipman, Asst. U.S. Atty., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

This court has before it cross-motions for summary judgment and a motion by the plaintiff for the appointment of counsel.

Reginald Lee was sentenced to twenty-two (22) years for bank robbery and larceny, aiding and abetting and assault during a robbery. He was committed to the Federal Correctional Institution, Memphis, Tennessee (hereinafter FCI–Memphis). He began serving his sentence at FCI–Memphis on March 26, 1980. On June 25, 1980 he was transferred to the United States Penitentiary, Lewisburg, Pennsylvania (hereinafter USP–Lewisburg).

Lee was designated a Category 12 Central Monitoring Case (hereinafter CMC) so that his location would be monitored to keep him separated from certain other prisoners in federal custody. The separation was for their mutual protection. The other prisoners were either involved in the same crime or were participants in the witness protection program.

Lee was also tentatively classified as a Category 9 CMC while he was at FCI–Memphis. His Category 9 status was the result of his alleged relationship to extremist groups. Soon after Lee's arrival at USP–Lewisburg the Category 9 classification was discontinued.

On June 30, 1981, Lee was placed in administrative segregation at USP–Lewisburg. The segregation resulted from his allegation that he had received a threatening note. While in administrative segregation, the prisoner received numerous incident reports and lost good time credit and was placed in disciplinary segregation.

On March 4, 1982, Lee was injured while in disciplinary segregation. The incident resulted from an attack or an altercation. Lee's cheek was lacerated and required stitches to close it. Lee also received a bloody nose in the incident.

Lee has filed a complaint with this court. The complaint does not contain an allegation of subject matter jurisdiction. The complaint alleges violations of his fifth amendment right to due process, eighth amendment protections against cruel and unusual punishment, his fourteenth amend-

ment guarantee of equal protection and violations of the policies of the Bureau of Prisons. This court's jurisdiction would be based on 28 U.S.C. § 1331. The relief of damages would be an implied private right of action. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

 Lee, who is proceeding pro se and in forma pauperis, has requested the appointment of an attorney to represent him. Pursuant to the in forma pauperis statute, 28 U.S.C. § 1915(b), a court may, in its discretion, request an attorney to represent any person unable to afford counsel. *See id.* This action should be taken only in "exceptional circumstances." *Cooks v. Bounds,* 518 F.2d 779 (4th Cir.1975).

At this stage of the plaintiff's case, there does not appear to be exceptional circumstances justifying the appointment of an attorney to represent the plaintiff. The motion will be denied.

 Initially it can be determined that claims based on the fourteenth amendment's equal protection clause cannot be maintained. The defendants in this case are all agents of the federal government. A cause of action under the fourteenth amendment requires action by one of the states, not the federal government. *See Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). *See also Wilson v. District of Columbia,* 338 A.2d 437 (D.C.App. 1975). Summary judgment for the defendants will be granted on the claims arising under the fourteenth amendment.

The plaintiff's first claim is under the due process clause of the fifth amendment and relates to his transfer from FCI–Memphis to USP–Lewisburg. His allegation appears to be that the reclassification was made because of his alleged association with terrorist groups. Lee asserts that such a reason for the transfer was somehow improper because the report of his alleged association came from the United States Attorney's office.

The defendant's exhibit No. 6 indicates that the Memphis staff tentatively designated Lee as both a Category 9 and Category 12 Central Monitoring Case. Category 9 indicates that the prisoner is in need of special monitoring because of past involvement with extremists groups. Category 12 indicates that the special monitoring is necessary so as to separate the prisoner from certain other inmates for safety and security reasons.

The designations were re-evaluated by Rick Reish, CMC Coordinator, USP–Lewisburg on or about July 31, 1980. Defendants' exhibit No. 6. At that time the Category 9 designation was removed. The Category 12 designation was retained. Lee received notice of this change. *See* plaintiff's exhibit No. 2, defendants' exhibit No. 7.

 The transfer from one prison to another does not raise due process protections, *Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). The Attorney General of the United States has the authority to transfer a prisoner without cause. 18 U.S.C. § 4082(b). The plaintiff appears to be alleging that the transfer was for an inappropriate reason. From reading *Meachum* and 18 U.S.C. § 4082(b), it appears to be irrelevant that an allegedly inappropriate reason was involved because the prison officials as agents of the attorney general need not have any reason for the transfer. *Pugliese v. Nelson,* 617 F.2d 916, 922–23 (2d Cir.1980).

Assuming for argument that the prison officials did need a reason for the transfer, they suggest that other considerations were involved in addition to possible relationships to extremists groups. They point to Lee's prior criminal record. Defendant's exhibit No. 1 at 3–5. They also point to the violent nature of Lee's current offense in which he apparently was the gunman. Defendants' exhibit No. 1 at 2–3. Another factor which was considered in selecting Lewisburg was the fact that Lee is from the Baltimore, Maryland area and has a son who resides there. Defendants' exhibit No. 1 at 6. There appears to be more than enough rea-

sons to justify the transfer, if the prison officials needed reasons at all.

■ The transfer of the plaintiff from FCI–Memphis to USP–Lewisburg does not raise due process rights. Even if some minimal due process rights were raised they were met by the notice given to Lee and his opportunity to appeal. The defendants' motion for summary judgment as it relates to the alleged due process violation in the transfer procedure will be granted.

■ The plaintiff's claim relating to his tentative classification as a Category 9 Central Monitoring Case[1] appears to be based on a violation of due process. He alleges that he was not given an opportunity to contest the information which was the basis for the designation, namely his alleged relationship to extremists groups. He further asserts that the opportunity to dispute the information in question should have been given to him prior to his reclassification from FCI–Memphis to USP–Lewisburg.

As has been determined above, the right to be in a particular prison does not raise due process protections. *See supra* at 1050. The issue at this point must be whether the tentative classification as a Category 9 Central Monitoring Case raises due process protections which should have been completed prior to the transfer.

The United States Court of Appeals for the Second Circuit in *Pugliese v. Nelson,* 617 F.2d 916 (2d Cir.1980), held that "a prisoner's interest in avoiding CMC classification does not entitle him to due process protections." *Id.* at 923–24. *See Carter v. Carlson,* 545 F.Supp. 1120, 1123–24 (S.D.W.Va.1982). *See also King v. Hilton,* 525 F.Supp. 1192, 1197–98 (D.N.J.1981). In the present case, the prisoner was only tentatively designated as a Category 9 CMC. The Category 9 classification was removed on or about July 31, 1980. The only arguable collateral effect of the tentative classification was the transfer to Lewisburg.

*Compare* 545 F.Supp. at 1123–24 (where the prisoner was denied furloughs, work-release, placement in a community treatment center, opportunity for early parole and the opportunity to participate in an institutional expectant mother program as collateral consequences of CMC classification.)

The facts of this case do not raise a due process protection for Lee based on his Category 9 CMC status. Since no due process protection arises, there are no rights to be violated. Thus the defendants' motion for summary judgment will be granted on this issue.

The plaintiff also complains about the defendants' handling of a written threat upon his life and the assault which he alleges occurred on March 4, 1982. This threat and the assault and the prison officials' alleged failure to properly respond seem to be the basis of Lee's claim under the eighth amendment's protection against cruel and unusual punishment.

■ The analysis of this issue begins with a determination that the eighth amendment protects prisoners from confinement under conditions in which the prisoner is subject to constant threats of violence by fellow prisoners. *Wright v. El Paso County Jail,* 642 F.2d 134, 135–36 (5th Cir.1981). The question which is to be decided in this case is whether the facts are established by the record or whether some dispute remains as to what occurred and whether the security provided has been sufficient.

The defendants allege that a thorough investigation of the threatening note and the assault has been made and they have verified that there is no longer any continuing danger to Lee. Defendant Wilkinson indicated in a letter to Grzegorek, the Regional Director, that the threatening note named a particular inmate as intending to inflict bodily harm upon Lee. Defendant's exhibit No. 8 at 1. The defendants do not

---

1. The parties are in some dispute about whether the term "special offender" was used in relation to the plaintiff. The defendants allege that the term is not part of the Bureau of Prisons' classification system. While the de-

fendants may be correct at the present moment, the term "special offender" has been used in the federal prison system. *See Catalano v. U.S.,* 383 F.Supp. 346, 348–49 (D.Conn.1974).

indicate that the named prisoner was questioned about the matter or that any steps were taken to investigate the particular individual.

Lee also apparently indicated to the prison officials that the threats resulted from his being a witness against one Dobson in a shooting incident. Apparently Lee was a witness in a case involving Dobson, but since no transcript was available it was impossible to determine whether Lee's testimony incriminated Dobson. Also no record was discovered of Dobson being in federal custody at the time. While the information on a link between the threats and the Dobson matter are not clear, they do tend to support the plaintiff's argument that he is in danger. *See generally* Defendants' exhibit Nos. 8 and 12.

An interesting fact which the defendants do not discuss is contained in the reply of a Mr. Putman (for Grzegorek) to the memorandum of Warden Wilkinson requesting a transfer of Lee to the United States Penitentiary at Leavenworth, Kansas. Defendants' exhibit No. 9. As has been indicated previously, Lee is a Category 12 CMC. A Category 12 is watched to prevent his being confined with certain other prisoners for their mutual protection. Lee was to be separated from two other prisoners, Julian Wilson # 02276–100 and Darrell Johnson # 17209–037. Defendants' exhibit No. 8 at 2. Putman said the following in his memorandum of February 11, 1982: "A separatee of Mr. Lee, one Darryl Johnson, Reg. No.: 17209–037 is no longer in Federal custody, having been removed from USP, Lewisburg on January 12, 1982." Johnson was thus arguably present at USP–Lewisburg when the written threat against Lee occurred on or about June 30, 1981.

The staff at USP–Lewisburg has developed the opinion that the note was written by Lee himself. The defendants do not offer much in the way of facts as to why the staff reached this conclusion. One reason for the conclusion is a statement by the plaintiff that he would force the prison staff to transfer him back to FCI–Memphis. Defendants' brief in support of motion for summary judgment at 3. It is not clear what other circumstances the staff relied upon in reaching their conclusion.

The incident of March 4, 1982 in which Lee received a facial laceration has also been differently interpreted by the parties. Lee pictures the incident as an assault which confirms his need for protection. The defendants are not sure what occurred, but claim that their investigation of the event has been made impossible by Lee's refusal to name the other inmate involved.

The physician's assistant who treated Lee makes an interesting comment in the report he filed. He said "Patient was asked numerous times as to how it happened, to which he replied that he did not know. It is my impression after examining the patient that he was assaulted by another person. He did not have any contusions or abrasions to either hand, which would reinforce my impression." Defendants' exhibit No. 10.

Lee alleges that he was questioned about the assault while he was being treated and that he responded that he did not see who assaulted him. He goes on to allege that no further investigation was made. The defendants assert that Lee said he did not know how the injury occurred and never admitted to the staff that he was assaulted or who might have assaulted him. There appears to be substantial disagreement between the parties as to what happened and whether the investigation was satisfactory. The defendants also argue that the injuries might have been the result of a fight instigated by the plaintiff. The report of the physician's assistant tends to mitigate against this understanding of the event.

■ An eighth amendment claim which is based on the failure to provide security for a certain inmate must allege a *deliberate indifference* on the part of the prison officials. *Redmond v. Baxley,* 475 F.Supp. 1111, 1117 (E.D.Mich.1979). *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Deliberate indifference" as used by the Supreme Court denotes "a species of recklessness or callous neglect." 475 F.Supp. at 1118.

In the instant case, the prison officials have taken a number of steps to protect Lee. When Lee informed the prison officials that he had received a threatening note, he was placed in administrative segregation. While in administrative segregation he received numerous incident reports. He was placed in disciplinary segregation as a result of these reports. On March 4, 1982 Lee was allegedly assaulted while he was in disciplinary segregation. He was given medical treatment for the injuries sustained and apparently has remained in disciplinary segregation since the assault. The prison officials have for the second time recommended that Lee be transferred to another institution. A decision on that second recommendation is not a part of the record.

These facts should be compared to the allegations in *Little v. Walker*, 552 F.2d 193 (7th Cir.1977). Judge Cummings, writing for the court, described the allegations as follows:

> According to the complaint, on September 6, 1973, through defendants' failure to afford reasonable protection, cell-house B was seized by a group of rebellious inmates for nine hours while gang rapes were inflicted on other inmates. Plaintiff's personal property, including legal materials, was destroyed and confiscated. After the rebellion, defendants nevertheless continued to confine plaintiff in the same area with those inmates in disciplinary segregation who had instigated the uprising. *Id.* at 195.

Clearly the actions of the prison officials in the instant case are not comparable to the thoughtless insensitivity of the prison officials in the *Little* case.

A case which appears on the surface to find an eighth amendment violation on less drastic facts that *Little* is *Withers v. Levine*, 449 F.Supp. 473 (D.Md.1978). Withers was a new arrival at the Maryland House of Correction. He was placed in a two-man cell with another inmate. Withers was sexually assaulted by his cellmate. The problem in the case came from the fact that no procedure existed to evaluate the placement of new arrivals. *Id.* at 477–78. The court granted injunctive relief in the *Withers* case to require the development of a systematic, preliminary screening process as to the compatibility of new cellmates. *Id.* at 478.

■ Lee's complaint in the present case does not relate to the lack of a procedure at the prison which might have prevented the threatening note or the assault. He has in fact had numerous opportunities to present his case to the prison officials and according to the facts has been protected as much as possible since the first threats. Lee was allegedly assaulted while in disciplinary segregation. The prison officials returned him to disciplinary segregation after he received treatment for the injuries sustained in the assault. Their alternatives were, however, limited. Lee would not return to the general population. His continuing disciplinary problems made administrative segregation an inadvisable place to house him. Disciplinary segregation was arguably the best choice. It certainly was not a selection which showed deliberate indifference.

The facts as alleged by Lee do not support an eighth amendment claim. The actions or inactions of the prison officials are not recklessness or callous neglect. Any shortcomings are at the most negligence. Negligence is not sufficient to create a constitutional deprivation. *Penn v. Oliver*, 351 F.Supp. 1292, 1294 (E.D.Va.1972). *See Redmond v. Baxley*, 475 F.Supp. 1111, 1117 (E.D.Mich.1979). Summary judgment will be granted in favor of the defendants on the claims under the eighth amendment.

■ In his counterstatement of material facts, Lee alleges that Bureau of Prison policy statement 5100.1 was violated because the designating teletype from the regional designator did not indicate a good reason for his redesignation to USP–Lewisburg. Judge Muir of this district considered the issue of whether the policy statements of the Bureau of Prisons create liberty interests. He said:

> The policies of the Bureau of Prison, while relevant on the question of the reasonableness of Respondent's decision,

do not give prisoners a liberty interest to enforce execution of those policies. Except under very unusual situations, executive guidelines and policy statements such as those at issue do not create liberty interests. *McCaskill v. U.S.,* No. 82–0905 at 4 (M.D.Pa. Mar. 7, 1983).

An allegedly technical violation of a policy statement does not present the kind of unusual situation which would warrant the creation of a liberty interest. The defendants' motion for summary judgment will be granted on the claim for violation of Bureau of Prison Policy statements.

As a result of the above analysis, it is not necessary to reach the defense of good faith immunity.