**John W. FLANAGAN, Petitioner,**

v.

**WARDEN, U.S. PENITENTIARY,
et al., Respondents.**

No. CV–91–1080.

United States District Court,
M.D. Pennsylvania.

Feb. 19, 1992.

---

John W. Flanagan, pro se.

Robert J. DeSousa, Asst. U.S. Atty., Chief, Civ. Div., Lewisburg, Pa., for respondents.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Petitioner John W. Flanagan, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, ("USP–Lewisburg"), filed this petition for writ of habeas corpus [1] on August 20, 1991 challenging disciplinary action taken against him by the institution for possessing a weapon. During a routine security "shakedown" at the prison, the staff discovered a sharpened 11" elongated piece of metal taped to the bottom of a locker in petitioner's cell. Petitioner was the sole occupant of the cell, and disciplinary charges were filed against him. He appeared at a hearing before the institution's Disciplinary Hearing Officer ("DHO") on February 6, 1991 and denied the charge. He claimed, in his defense, that anyone could have secreted the weapon in his cell and that he was absent from his cell much of the day. He further stated that he lacked the physical strength to use such a weapon. The DHO found that petitioner had committed the act alleged and sanctioned him to serve thirty days in disciplinary segregation and forfeit sixty days of statutory good time. (Record Document No. 14, filed December 17, 1991, exhibit 3.4).

In this action, petitioner challenges the constitutionality of the disciplinary pro-

---

1. 28 U.S.C. § 2241.

**180**

ceedings against him, claiming: (1) there was insufficient evidence that the weapon belonged to him; (2) that the prison staff's denial of his request to conduct a fingerprint analysis of the weapon or to administer a polygraph examination or sodium pentothal to him to prove his veracity was a violation of his rights; and (3) that his right to a meaningful appeal from the adverse finding of the DHO was infringed because an official other than the Bureau of Prisons' General Counsel signed the response to his administrative remedy appeal.

Before the court are: (1) the petition for writ of habeas corpus (Record Document No. 1, filed August 23, 1991); (2) a second application for *in forma pauperis* status (Record Document No. 5, filed November 1, 1991);[2] (3) petitioner's motion (Record Document No. 6, filed November 14, 1991) for default judgment; (3) respondents' motion (Record Document No. 12, filed December 9, 1991) for a protective order; (4) respondents' motion (Record Document No. 15, filed December 18, 1991) for sanctions against petitioner; (5) petitioner's motion (Record Document No. 20, filed December 31, 1991) for Rule 11 sanctions against Robert DeSousa, Esq.; and (6) petitioner's motion (Record Document No. 23, filed January 15, 1992) for a docket sheet.

After considering petitioner's allegations and the response of the respondents, we find all of his claims to be without merit. For the reasons discussed below, the petition for writ of habeas corpus will be denied as will petitioner's motion for default judgment. We will deny petitioner's motion for sanctions and grant respondents' Rule 11 motion. All other motions will be denied as moot.

DISCUSSION

*Sufficiency of the evidence*

■ Petitioner attacks the sufficiency of the evidence adduced against him at the misconduct hearing. All that the constitution requires is "some evidence" supporting a decision made in a prison disciplinary proceeding. In "ascertaining whether this

standard is satisfied", the court is not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence presented. All that the fundamental fairness guaranteed by the Due Process Clause requires in this context is that the reviewing court assure itself that the decisions of prison administrators "have some basis in fact." *Superintendent v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985). Accord: *Young v. Kann*, 926 F.2d 1396, 1402–03 (3d Cir.1991).

■ All of the facts of record indicate that this requirement has been met. The record before the hearing examiner contained sufficient evidence to warrant a finding that the weapon found in Flanagan's cell during a routine search belonged to him. He had been the sole occupant of the cell for the past eight months, and the officer who found the weapon testified that it was carefully taped to the bottom of petitioner's locker in such a manner that it had probably been placed there by someone standing inside the cell. See: *Wynn v. United States Bureau of Prisons*, Civil No. 86–1523 (M.D.Pa. February 29, 1988), (Conaboy, J.).

*Scientific testing*

■ Petitioner claims that his due process rights were violated because the institution staff refused to grant his request for a fingerprint analysis of the weapon or the administration of a polygraph examination to him. Petitioner is not constitutionally entitled to such tests to prove his innocence.

Prisoners facing a disciplinary hearing have the right to:

... receive written notice of claimed violations at least 24 hours in advance of the hearing and ... a written summary of evidence relied upon by the fact-finder in reaching its disciplinary decision.... Second, an 'inmate facing disciplinary charges must have an opportunity to

**2.** The court denied petitioner's first application for *in forma pauperis* status in an order dated September 4, 1991 (Record Document No. 3).

marshal the facts and prepare a defense'.... [Citations omitted.].... '[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

*Young, supra*, 926 F.2d at 1399, citing *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).

The record establishes that the disciplinary proceedings against Petitioner [3] comported in every material respect with these requirements. He received notice of the charges against him prior to the hearing, was present at the hearing, and called two inmate witnesses to testify on his behalf. See: *Frankenberry v. Williams*, 677 F.Supp. 793, 799 (M.D.Pa.1988), (Rambo, J.). He had no constitutional right to the grant of his request for "scientific" testing to establish non-ownership of the weapon.

### Administrative appeal remedy

█ Petitioner's claim that his rights to a meaningful appeal were violated is equally infirm. Petitioner claims that his final level of appeal (Form BP–11) should have been signed by the General Counsel and not by the Administrative Remedy Coordinator, who oversees the processing of administrative appeals at that level. He relies on various Operations Memoranda promulgated by the Bureau of Prisons to substantiate this claim.

This allegation fails to state a constitutional claim. The constitution does not require strict adherence to administrative regulations and guidelines. It requires only compliance with minimal federal due process standards. Failure to conform to agency regulations implicates a constitutional right only if the inmate has a liberty interest in the rights afforded by such regulations. *Grandison v. Cuyler*, 774 F.2d 598, 603 (3d Cir.1985) and *Drayton v. Robinson*, 719 F.2d 1214, 1219 (3d Cir.1983).

3. The documents are attached as exhibits to defendant's response to the petition (Record

Petitioner's allegation that an official other than the Bureau of Prisons' General Counsel signed the response to his administrative remedy appeal does not allege a deprivation of due process or implicate a liberty interest. See, e.g. *Hewitt v. Helms*, 459 U.S. 460, 468, 477, 103 S.Ct. 864, 869, 874, 74 L.Ed.2d 675 (1983) and *Flick v. Alba*, 932 F.2d 728 (8th Cir.1991), (per curiam), ("[F]ederal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure.") Petitioner cannot rely on Operations Memoranda, which are internal publications intended to provide guidance to Bureau of Prison staff, to establish a violation of his constitutional rights. See generally: *Miller v. Henman*, 804 F.2d 421 (7th Cir.1986), *cert. denied*, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987) and *Lee v. Carlson*, 564 F.Supp. 1048, 1054 (M.D.Pa.1983). Further, federal regulations specifically provide that signatory authority may be delegated to the National Inmate Appeals Administrator "at the central office level". 28 C.F.R. § 542.-11(a)(4).

### Petitioner's motion for default judgment

Petitioner moved for default judgment on the ground that respondents failed to file a timely response to his petition. His assertions are incorrect. The United States was served, on October 25, 1991, with the petition and a summons directing it to respond within sixty days of service. Its response was, therefore, not due until December 24, 1991. Petitioner's motion for default judgment, filed November 14, 1991 was premature since the response was not yet due. Further, the respondents' response was timely filed on December 17, 1991 (Record Document No. 14).

### Second application to proceed in forma pauperis

Flanagan's petition for writ of habeas corpus filed August 20, 1991 was accompanied by a petition for leave to proceed *in forma pauperis* pursuant to 28 U.S.C.

Document No. 14, filed December 17, 1991).

§ 1915(a). In an order dated September 4, 1991, the court denied the application finding that Flanagan was able to pay the $5.00 filing fee. 28 U.S.C. § 1914(a) and directed him to do so within fifteen days of the date of our order if he wished to proceed with the action. Instead of paying the fee as directed, petitioner filed a second application for *in forma pauperis* status on November 1, 1991.

Because we have considered the matter on its merits despite petitioner's non-compliance with our prior order, his second application to proceed *in forma pauperis* is moot at this juncture and will be denied as such.

*Motions for sanctions*

■ The only remaining matters are the cross-motions for sanctions. Fed.R.Civ.P. 11 [4] provides for the imposition of sanctions against counsel or parties acting *pro se* if the court finds that pleadings or other papers signed by the counsel or the party are " 'frivolous, legally unreasonable or without factual foundation, even though ... not filed in subjective bad faith.' " *Baxter v. A.T. & T. Communications*, Civil No. 88–471, slip op. at 3 (D.N.J. Sept. 5, 1989), (available on WESTLAW at 1989 WL 121058), quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986). The rule serves as a warning to counsel and parties alike that before filing a document, "they must 'Stop, Look and Listen' or as this circuit phrased it, 'Stop, Think, Investigate and Research.' " *Baxter, supra*, slip op. at 3, quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987). Accord: *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503–05 (3d Cir.), *cert. denied*, —— U.S. ——,

112 S.Ct. 376, 116 L.Ed.2d 327 (1991) and *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987).

Petitioner argues that opposing counsel should be sanctioned for, *inter alia:*

(1) filing a reply brief and a notion to dismiss "based on a false allegation that Petitioner had not obeyed the Court's order to pay a five dollar filing fee."

(2) misciting case law; and

(3) mischaracterizing the disposition of other matters filed by petitioner before this court.

None of the matters petitioner raises warrant the imposition of sanctions. None evidences bad faith or failure to investigate before signing a pleading. Petitioner is engaging in the same frivolous nit-picking which has marked this case and others he has filed before this court. Petitioner has repeatedly insisted on raising frivolous matters, making groundless allegations, and baselessly impugning the motives of the United States Attorneys by raising groundless objections to the manner in which they have represented the interests of the institution employees whom petitioner has sued.

This brings us to respondents' countermotion for sanctions. Based on the considerations just stated, we find that petitioner should be sanctioned. He has persisted in filing repeated papers raising groundless objections at every turn of the case. The only inference which can reasonably be drawn from such conduct is that his only purpose is to harass the respondents, and needlessly prolong and complicate the case,

---

**4.** Rule 11 provides, in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at lest one attorney of record in the attorney's individual name ... A party who is not represented by an attorney shall sign the party's pleading, motion or other paper ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper, that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.....
If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

etc., not to advance the case. We find his actions sanctionable, and, consistent with the Rule 11 goal of deterring baseless filings, we will require him to pay a portion of respondents' counsel fees.

We are mindful of the fact that petitioner is acting *pro se*. Although the pleadings of *pro se* litigants are "evaluated under less stringent standards than are the formal pleadings of lawyers", (*Thomas v. Taylor*, 138 F.R.D. 614, 617 (S.D.Ga.1991)), *pro se* litigants are not insulated "from the imperatives of the rule." *Briehler v. American Continental Property of New Jersey, Inc.*, Civ. No. 89–4761, slip op. at 9 (D.N.J. June 13, 1991), (available on WEST-LAW at 1991 WL 117801), citing, *inter alia, Abdul–Akbar v. Watson*, 901 F.2d 329, 334 n. 2 (3d Cir.). Moreover, petitioner is an attorney. Although he has stated in the past that he did not practice in federal court prior to his incarceration, petitioner has filed and participated extensively in several actions before this court since his transfer to USP–Lewisburg, and is without question aware of the responsibility Rule 11 imposes on signatories to court filings.

Respondents seek attorney's fees and injunctive relief. Although defense counsel undoubtedly spent much more time preparing responses to petitioner's many motions, petitions, arguments, etc., they seek only fees for one hour of their time at the rate of $100.00 per hour. Their request is reasonable, and we will award them fees in the amount of $100.00.

Respondents also seek injunctive relief in the form of an order directing petitioner "to forbear from filing future complaints, petitioners [sic] or other types of pleadings without the express permission of the court to do so." The respondents urge the court to take judicial notice of petitioner's proclivity for filing "groundless and vexatious" litigation. The court is well aware of petitioner's penchant for pursuing patently frivolous matters and has in the past imposed monetary sanctions for just such conduct. We will, therefore, issue an order directing petitioner to show cause, if any there be, why he should not be enjoined from filing any further pleadings, motions or other papers raising matters disposed of by this court in prior dismissed actions. *Chipps v. United States District Court for the Middle District of Pennsylvania*, 882 F.2d 72, 73 (3d Cir.1989).