762 F.2d 635
 James F. PORM, Appellant,
v.
Carl WHITE; James Jones, Assistant Superintendent; Dewey
Tindle, Food Service Manager; Dr. W. Harold
McCormick, D.O.; C.R. Unroe--COI; E.J.
Parkes--COI; D.W.
Edwards--COI, Appellees.
 No. 83-2223.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1985.
Decided May 16, 1985.
 
 Ignatius N. Yuan, St. Louis, Mo., for appellant.
 Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before HEANEY, BRIGHT and ARNOLD, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 James Porm, an inmate of the Missouri Training Center for Men in Moberly, Missouri (Training Center), brought this 42 U.S.C. Sec. 1983 action against Carl White, Superintendent of the Training Center, Dewey Tindle, the Training Center's Food Service Manager, and other Missouri Department of Correction officials. Porm was stabbed by another inmate of the Training Center and immediately was taken to the Training Center medical facility where his wound was treated and his chest x-rayed. One hour later, Porm's chest again was x-rayed, and the doctor detected free air around the edge of the chest. Suspecting that the knife might have nicked a lung, and that the lung might collapse, the doctor recommended that Porm be taken to the hospital for additional care. He was transported to the Missouri State Penitentiary Hospital, where he was treated and subsequently returned to the Training Center.
 
 
 2
 Porm then brought this action against Tindle, White, and various other Missouri Department of Correction officials, contending that they (1) failed adequately to protect him from being assaulted; (2) failed to provide adequate medical care after the assault; and (3) negligently transported him to the Missouri State Penitentiary Hospital. Porm's case was tried before a jury in June, 1983. At the close of Porm's case-in-chief, the defendants moved for a directed verdict. The magistrate granted the defendants' motion on the first two issues, but allowed the negligent transportation claim to go to the jury. The jury returned a verdict in favor of the defendants.
 
 
 3
 Porm appeals, contending that the magistrate erred in directing a verdict in favor of defendants White and Tindle on his claim of inadequate protection from assault. We affirm the directed verdict as to Carl White, reverse the directed verdict as to Dewey Tindle, and remand for additional proceedings consistent with this opinion.
 
 
 4
 I. DISCUSSION.
 
 
 5
 To sustain his claim that White and Tindle failed to take sufficient precautions to protect him from assault, Porm "must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." Branchcomb v. Brewer, 669 F.2d 1297, 1298 (8th Cir.1982). See also Martin v. White, 742 F.2d 469, 474 (8th Cir.1984); Wade v. Haynes, 663 F.2d 778, 781 (8th Cir.1981), aff'd sub nom. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).
 
 
 6
 An inmate may establish the prison officials' reckless disregard of his right to be free from attacks by showing the existence of a pervasive risk of harm from the other prisoners and the prison officials' failure reasonably to respond to that risk. Martin, 742 F.2d at 474. See also Withers v. Levine, 615 F.2d 158, 161 (4th Cir.), cert. denied, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980); Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir.1973). In Martin, we adopted the following definition of a "pervasive risk" of harm:
 
 
 7
 A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution. * * * It is enough that violence and sexual assaults occur * * * with sufficient frequency that * * * prisoners * * * are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures.
 
 
 8
 Martin, 742 F.2d at 474 (quoting Withers, 615 F.2d at 161).
 
 
 9
 When the inmate has established a pervasive risk of harm, the next step is to determine whether the prison officials reasonably responded to that risk. Martin, 742 F.2d at 475.
 
 
 10
 Porm contends that he presented sufficient evidence of a pervasive risk of harm and of White's and Tindle's failure to respond to that risk to avoid a directed verdict. The standard for determining when a directed verdict is proper is well established.
 
 
 11
 A directed verdict is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. * * * In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party.
 
 
 12
 Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir.1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971) (emphasis in original) (citations omitted).
 
 
 13
 In Dace v. ACF Industries, Inc., 722 F.2d 374 (8th Cir.1983), adhered to as supplemented, 728 F.2d 976 (8th Cir.1984), we concluded that the instruction to view the evidence favorably to the nonmoving party requires the court to:
 
 
 14
 (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.
 
 
 15
 Id. at 375.
 
 
 16
 According to Porm's testimony and the stipulated testimony of his brother William Porm (who was also an inmate at the Training Center), racial tension had increased between the black and the white inmates during the weeks preceding the stabbing. This tension grew due to overcrowding and conflict over sexual harassment of some white inmates by certain black inmates.[1] Porm contends that both he and his brother told Tindle that violence between these inmates was likely to occur, and that Tindle told them he would relay this information to his supervisors, including Carl White. He also contends that Tindle assured them appropriate action would be taken to prevent any such violence.
 
 
 17
 Several days later, William Porm was involved in a fight with an inmate in the supply room of the food service bakery. Porm testified that he told Tindle that his brother had fought with a member of the group that was allegedly sexually harassing the food service inmates, and that he told Tindle the same group of inmates had threatened him. Porm also testified that when he told Tindle of these threats, Tindle replied, "I'll take care of it. Don't worry about it." (Tr. 35) Two days later, Porm was stabbed in the prison yard by an inmate he claims was a member of the same group. We believe this evidence was sufficient to allow a reasonable jury to conclude that a pervasive risk of harm existed, and that Tindle failed reasonably to respond to this risk.
 
 
 18
 We affirm, however, the grant of a directed verdict as to Carl White. Recently, in a case dealing with the conditions at the Missouri Training Center during the period in which Porm was stabbed, we addressed "the inability or unwillingness of some prison administrators to take the necessary steps to protect their prisoners from sexual and physical assaults by other inmates." Martin, 742 F.2d at 470. In Martin, we held that the magistrate erred in directing a verdict in favor of Carl White because a jury could have found that the assaults on the plaintiffs resulted from White's failure to develop adequate protection policies, rather than the failure of White's subordinates to comply with these policies. Id. at 475-76.
 
 
 19
 The present case, however, is markedly different. Prom does not allege that the prison officials failed to protect him from a common threat that could have been prevented by developing a definite protection policy. Rather, Porm contends that White and Tindle failed to protect him from a threat specific to himself. Because we find nothing in the record to indicate that White was ever made aware of this specific threat, and because liability in a section 1983 action may not be grounded upon a respondeat superior theory, id. at 475, we find that the magistrate properly directed a verdict in favor of Carl White.
 
 
 20
 Accordingly, the judgment of the trial court is reversed as to Dewey Tindle, affirmed as to the other defendants, and remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Porm testified that "on different unrelated but the same type of incidents * * * these black inmates [were] sexually harassing these young pretty white guys that were coming through there. And they assigned them to food service, and would take them back in the trash room and just beat them up and try raping them. And the majority of the white guys in there just got tired of it, you know, and they started telling these cooks about it, and they wouldn't do [anything] about it." (Tr. 35)