785 F.2d 826
 54 USLW 2535, 7 Employee Benefits Ca 1313
 Laurence W. HOPE, Eduardo Vallejo, Arlie Baker and James E.
McCauley, Plaintiffs/Appellees,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, NINTH
DISTRICT; International Brotherhood of Electrical Workers
Local Union No. 1245; Payroll Equity Plans, Inc.; Manuel
A. Mederos; Ron Fitzsimmons; Jack McNally; and Ibew
Pension Trust, Defendants/Appellants.
 No. 84-2816.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1985.
Decided March 27, 1986.
 
 Brian M. Englund, Van Camp & Johnson, Sacramento, Cal., for plaintiffs/appellees.
 John L. Anderson, Richard K. Grosboll, Neyhart, Anderson, Nussbuam, Reilly & Freitas, San Francisco, Cal., for defendants/appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before CHAMBERS, TANG and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 A union pension trust appeals a partial summary judgment holding that certain terminated employees were one hundred percent vested under the pension plan. The plan provided for thirty percent vesting upon completion of 156 weeks service and one hundred percent vesting after 158 weeks. The employees were terminated at the end of 156 weeks service and sought credit for accrued vacation time to qualify for 158 weeks. We hold that the pension plan did not provide one hundred percent vesting in this situation. Thus we reverse the grant of partial summary judgment and order that partial summary judgment be entered in favor of the Pension Trust. In addition, other defendants who were dismissed from the suit appeal the district court's denial of award of attorney's fees. We hold that the trial court did not abuse its discretion in denying attorney's fees to the other defendants.
 
 FACTS
 
 2
 Plaintiffs were appointed as business representatives of Local 1245 of the International Brotherhood of Electrical Workers (IBEW 1245) on July 25, 1977.[1] They were appointed by the Local's newly-elected business manager, Dean Cofer, who took office for a three-year term beginning July 25. Each plaintiff had been employed at Pacific Gas & Electric (PG&E) and each took a three-year Union leave of absence to work for IBEW 1245.
 
 
 3
 At the June 1980 Union election, McNally was selected to succeed Cofer as new business manager, effective July 25, 1980. The business manager has the power under Union bylaws to hire and fire business representatives. The plaintiffs, between the election date and the end of Cofer's term, submitted requests for vacation time beginning a few days before July 25 and extending into McNally's term, as well as requests that their resignations be effective at the end of their vacations.[2] Each plaintiff's vacation time exceeded two weeks. Cofer granted the requests for the delayed termination dates. He and his assistant, as two of the three trustees of the pension plan, using those termination dates, determined that the plaintiffs would be one hundred percent vested under the plan, which provided for one hundred percent vesting for employees with 158 weeks of service.[3] Cofer sent letters to that effect to the plan administrator one week before his term expired.
 
 
 4
 Soon after taking office, the new business manager and plan trustees determined that the plaintiffs had been terminated effective July 25, 1980 and therefore were only thirty percent vested in the plan because each had only three years of service, 156 weeks, not 158 weeks. They rescinded the letters of instruction sent to the plan administrator and paid the plaintiffs for vacation time earned but not taken before their termination.
 
 
 5
 Plaintiffs exhausted the internal appeal required by the plan and filed suit in district court against the current plan trustees, Local 1245, and the IBEW, alleging ERISA and state law violations. The district court, at a hearing held pursuant to plaintiffs' motion for partial summary judgment, announced its intention to dismiss all current defendants but authorized plaintiffs to file an amended complaint adding the Pension Trust as defendant. Plaintiffs filed an amended complaint adding the Trust in the form of a Sixth Cause of Action.
 
 
 6
 The district court heard plaintiffs' motion and defendants' cross-motion for partial summary judgment and issued its order dismissing all defendants except the IBEW Pension Trust and all claims except the ERISA claims in the Sixth Cause of Action. The court, although finding that plaintiffs had been terminated properly by the new business manager as of July 25, 1980, three years after commencing service, credited the plaintiffs with accrued vacation time so that their total "service" to IBEW 1245 totalled over 158 weeks. The court granted plaintiffs' motion for partial summary judgment against the Trust and denied the dismissed defendants' request for attorney's fees. Defendants timely appealed.[4]
 
 ANALYSIS
 A. Summary Judgment on Pension Plan Vesting
 1. Standard of Review
 
 7
 We review de novo the trial court's grant of summary judgment, Nevada v. United States, 731 F.2d 633, 635 (9th Cir.1984), and apply the same standard as applied by the trial court under Fed.R.Civ.P. 56(c). Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328 (9th Cir.1983). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing summary judgment, the court finds that no genuine issue as to any material fact remains to be resolved at a trial on the merits and the moving party is entitled to judgment as a matter of law. Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir.1985).
 
 
 8
 All parties agree that there are no material facts in dispute. We must decide whether the plan provided for thirty percent or one hundred percent vesting, and whether this interpretation conflicts with Department of Labor regulations implementing ERISA, 29 C.F.R. Sec. 2530.200b-2 (1983). This issue appears to be one of first impression and the outcome depends on interpretation of the contract and regulations.
 
 
 9
 Interpretation of a contract is treated as a question of law. Beck Park Apartments v. United States Department of Housing & Urban Development, 695 F.2d 366, 369 (9th Cir.1982).
 
 2. Discussion
 
 10
 The pension plan is an employee benefit plan within the meaning of section 3(2) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001-1461 (1982) (ERISA), and conforms to the requirements of ERISA. A participant's eligibility for benefits is based on the "period of service," and a participant accrues a year of service for each twelve-month period of continuous employment. "[P]articipation in the Plan shall cease upon termination of employment with [IBEW 1245]. Termination of employment may have resulted from retirement, death, voluntary or involuntary termination of employment ...." The district court concluded and the plaintiffs do not dispute that plaintiffs were validly terminated at the end of three years of employment.
 
 
 11
 While the pension plan provides that participation in the plan ends on the date employment terminates, the court below held that accrued vacation time could be credited toward "service." This is significant because the plan creates a major dichotomy between employment for 156 weeks, required for thirty percent vesting, and 158 weeks, qualifying for one hundred percent vesting. The plaintiffs may be credited with 158 weeks of service only if the accrued terminal vacation time is credited. Prior to 1978, plan participants earned ten percent vesting for each year of service. The plan was amended in 1978 to provide for thirty percent vesting of employees with 156 weeks (3 years) of service and one hundred percent vesting for those with 158 weeks of service. The 156 weeks reflects the standard three-year term for Union officers. Union officers who broke their ties with PG&E and forfeited their right to return to their previous PG&E jobs by staying more than three years (158 weeks) with Local 1245 would be one hundred percent vested.
 
 
 12
 Thus the intent and the language of the plan are clear: a participant who is terminated at the end of a three-year rotation in office is to receive thirty percent vesting. If vacation time has not been taken during the three year term, the Local may nevertheless terminate the employee at the end of three years and pay that employee for the accrued vacation without having to credit the post-termination vacation time toward "service." However, regardless of the plan's intent, it should be noted that the plaintiffs in this case would have been one hundred percent vested if their original termination dates had remained effective when the new business manager took office. The plan apparently was not intended to allow an IBEW 1245 employee to postpone the annual two weeks of vacation until after the termination of employment and then receive service credit for it which would entitle the employee to the additional seventy percent vesting. The district court recognized that such a result was contrary to the plan's intent but concluded that a Department of Labor (DOL) regulation, 29 C.F.R. Sec. 2530.200b-2(a)(2),[5] mandated such a result.
 
 
 13
 We do not find that DOL regulations require a result contrary to the intention of the plan. Section 200b-2(a) sets forth the general rule:
 
 
 14
 (a) General Rule. An hour of service which must, as a minimum, be counted for the purposes of determining a year of service, a year of participation for benefit accrual, ..., is an hour of service as defined [as follows] ...
 
 
 15
 (1) An hour of service is each hour for which an employee is paid, or entitled to payment, for the performance of duties for the employer during the applicable computation period.
 
 
 16
 (2) An hour of service is each hour for which an employee is paid, or entitled to payment, by the employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated ) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.
 
 
 17
 29 C.F.R. Sec. 2530.200b-2 (emphasis added).[6] This section, which taken alone might suggest that the district court was correct in crediting plaintiffs with their terminal vacation service, is modified by subsection 200b-2(b)(3)(i):
 
 
 18
 Rule Against Double Credit. [A]n employee is not required to be credited on account of a period during which no duties are performed with a number of hours of service which is greater than the number of hours regularly scheduled for the performance of duties during such period.
 
 
 19
 29 C.F.R. Sec. 2530.200b-2(b)(3)(i). The Rule Against Double Credit is further explained by examples in subsection (b)(3)(ii) which are applicable to this case:
 
 
 20
 Examples. (A) Employee A has a regular 40-hour workweek. Each year Employee A is entitled to pay for a two-week vacation, in addition to receiving normal wages for all hours worked, regardless of whether A actually takes a vacation and regardless of the duration of his vacation. The vacation payments are, therefore, calculated on the basis of units of time (weeks).... A takes no vacation but receives vacation pay. A is entitled to no credit for hours of service for the vacation payment ... because the payment was not made on account of a period during which no duties were performed.
 
 29 C.F.R. Sec. 2530.200b-2(b)(3)(ii).[7]
 
 21
 In this case, plaintiffs worked the number of hours regularly scheduled for the performance of their duties for three years. As in the example above, they were entitled to two weeks vacation pay per year regardless of whether they actually took vacation. Had they worked fifty weeks and taken two weeks vacation, they would be entitled to fifty-two weeks vesting credit under the General Rule, supra. Had they worked fifty-one weeks and taken only one week's vacation, they would be entitled to fifty-two weeks vesting credit. See 29 C.F.R. Sec. 2530.200b-2(b)(3)(ii)(A) (further examples explaining the application of the Rule Against Double Credit in this situation). Likewise, as in this case, where the plaintiffs worked fifty-two weeks and took no vacation, they are still entitled to only fifty-two weeks vesting credit. Any other result runs contrary to the Rule Against Double Credit and the intent underlying these regulations.
 
 
 22
 We agree with the district court that plaintiffs were properly terminated at the end of their three year terms of employment. We disagree with that court's conclusion that the plan and the regulations permit plaintiffs to receive vesting credit for vacation time not taken within that three year period. We therefore reverse the partial summary judgment in favor of the plaintiffs, and remand to the district court with instructions to enter a partial summary judgment in favor of the Pension Trust.
 
 B. Refusal to Award Attorney's Fees
 
 23
 ERISA section 502(g), 29 U.S.C. Sec. 1132(g), provides that a "court in its discretion may allow a reasonable attorney's fee" and court costs to either party in an action brought by a plan participant. Those defendants that were dismissed by the district court requested an award of attorney's fees, alleging the action against them was frivolous and brought in bad faith. The court denied the request, and defendants appeal that decision. This court may set aside a decision denying fees only if the district court abused its discretion, failed to state the reasons for its decision, or used incorrect legal standards to reach its decision. Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 452-53 (9th Cir.1980); Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983)).
 
 
 24
 This circuit has established guidelines for trial courts to apply in the exercise of their discretion under section 502(g).
 
 
 25
 They should consider these factors among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 26
 Hummell, 634 F.2d at 453. The court below explicitly considered those factors. It stated that it found no bad faith on the part of plaintiffs, that plaintiffs' legal position was not unmeritorious, and that defendants had not shown plaintiffs had the resources to satisfy an award.
 
 
 27
 Even though it appears that the plaintiffs' position was incorrect, this does not necessarily mean the plaintiffs' position was "unmeritorious" or that suit was brought in bad faith. The district court did not use incorrect legal standards and its decision to deny attorney's fees is entitled to deference. An abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors. Pue v. Sillas, 632 F.2d 74, 78 (9th Cir.1980). The district court's action does not give rise to a definite conviction that a clear error was made.
 
 CONCLUSION
 
 28
 The grant of partial summary judgment for plaintiffs is reversed and the case is returned to the court below for entrance of partial summary judgment for defendant Pension Trust. Neither the plan nor ERISA requires that vacation time accrued but not taken before the proper termination of the employment relationship need be credited toward vesting. The district court's denial of defendants' request for an award of attorney's fees is not an abuse of discretion and should be affirmed.
 
 
 29
 REVERSED and REMANDED in part; AFFIRMED in part.
 
 
 
 [1]
 Vallejo was appointed on August 1
 
 
 [2]
 The situation of the plaintiff, Vallejo, is somewhat different in that he was offered a position by the new business manager but never accepted it. His dates of employment were slightly different but the legal issues are the same and thus all plaintiffs will be dealt with as a single group
 
 
 [3]
 The section relevant to the plaintiffs is 6.3:
 
 
 [6]
 3 Termination for Other Reasons: If a Participant's employment with the Employer is terminated before age 65 for any reason other than Disability or death, the Participant shall be entitled to:
 * * *
 (b) He shall be vested in, and entitled to receive, an amount equal to a percentage of the balance of his Employer Contribution Account, if any, and Past Service Account, if any, as of the date employment terminated. Such percentage shall be determined in accordance with the following:
 * * *
 (3) Employees hired before June 14, 1978, but who on that date had not completed 158 weeks of service shall upon completion of 3 years service become 30% vested and upon the completion of 158 weeks of service become 100% vested.
 
 
 [4]
 The district court judgment of November 16, 1984 was not a final disposition in that it did not dispose of all issues and all parties. Although the Court's November 16 order did not direct entry of judgment in accordance with Fed.R.Civ.P. 54(b), the district court entered an order on March 22, 1985, in which it stated that it had been the intent of the court that the original order direct entry of judgment in accordance with Rule 54(b). Therefore, the appeal is appropriate pursuant to Freeman v. Hittle, 747 F.2d 1299, 1301-02 (9th Cir.1984), which held that an order containing a Rule 54(b) certification may validate a prematurely filed notice of appeal
 
 
 [5]
 Section 200b-2(a)(2) was promulgated, pursuant to Congress' delegation to the Secretary of Labor in ERISA, 29 U.S.C. Sec. 1052(a)(3)(C), to define "hours of service" in the context of determining whether employees are vested
 
 
 [6]
 Narrative accompanying the final regulation in the Federal Register gives as an example the disabled employee who, although terminated from employment, continues to receive payments for his disability. That employee must continue to receive credit for hours of service. 41 Fed.Reg. 56,464-65 (1976)
 
 
 [7]
 This example supports the view that plaintiffs need not be credited for vacation time in excess of the three year period of employment. Otherwise, the employment relationship would be extended by operation of law in a manner inconsistent with Congress' and DOL's intent