Keith A. BERG, Plaintiff-Appellant,

v.

Larry KINCHELOE, et al.,
Defendants-Appellees.

Nos. 84–4310, 85–3963.

United States Court of Appeals,
Ninth Circuit.

Submitted April 7, 1986 *.

Decided July 14, 1986.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Fed.R. App.P. 34(a); Ninth Circuit Rule 3(f).

Keith A. Berg, in pro per.

Paul A. Silver, Olympia, Wash., for defendants-appellees.

Before GOODWIN, HALL and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge:

Keith A. Berg, appearing pro se, appeals from the district court's grant of summary judgment in favor of the defendants in this action under 42 U.S.C. § 1983. Berg contends that summary judgment was improper because triable issues of material fact exist. We affirm in part, reverse in part and remand.

## I

### FACTS

In August 1983 Berg, a prisoner at the Washington State Penitentiary (the "prison"), filed a pro se civil rights complaint under 42 U.S.C. § 1983. He named as defendants five employees of the prison: Kincheloe, Marsh, Steinbeck, Fleming and Iverson. Berg alleged that prison officials placed him in the prison's protective custody unit because his life was in danger; that while in that unit, Sergeant Marsh, an officer at the prison, ordered him to report to a "tier porter job" in the protective custody unit; that he told Marsh his life would be in danger if he reported to the job, but Marsh threatened him with disciplinary action if he refused to report to the site; that he complied, and about one hour later he was beaten and raped at the site by his cell partner; that he was then taken to the prison hospital but Iverson destroyed the physical evidence (stool sample) to "cover-up" the incident. Berg requested monetary damages for the defendants' "[callous] disregard" of his "right to be free from cruel and unusual punishment," and for their "criminal negligence" in the operation of the protective custody unit.

The defendants answered and moved for dismissal or summary judgment. In support of their motion, the defendants presented internal memoranda from officials at the prison and investigators of the Walla Walla Police Department, and a sworn affidavit from Fleming, a custodial unit supervisor in the prison admissions unit. The memoranda revealed that prison officials reported the incident to police after the assault, and that both prison and police officials conducted investigations. Berg refused to identify his assailant to the police, and the police disposed of the physical evidence of the rape because it could be preserved only for a short period of time.

Fleming stated he had personally investigated the incident and had forwarded his findings to a prison hearing committee. According to Fleming, Berg initially had maintained that he did not know who committed the rape, because he had been hit from behind and had blacked out. Fleming also stated that "the local police department closed the case because Berg refused to prosecute and the evidence was destroyed."

Berg filed two responses to the defendants' motions. In these he stated, under oath, that he rested on the "averments to his pleadings ...;" that prison officer Marsh's order to report to the tier porter job "assisted the rape and assault ...;" and that "other prisoners ... can enlarge to prison discipline, assault and rapes, [and] are relevant to determine the peril ... to the plaintiff ... [of] said rapes and as-

saults—and such witnesses will be called by the plaintiff." In subsequent papers, Berg stated he was twenty-six years old, weighed one hundred thirty pounds and was five feet seven. He also sought to introduce affidavits from other prisoners who had allegedly suffered rapes and beatings.

The district court granted the defendants' summary judgment motion, ruling that Berg had failed to present any genuine issue of material fact or demonstrate that the defendants' actions proximately caused the rape and beating. Berg appeals.

## II

## STANDARD OF REVIEW AND APPLICABLE LEGAL STANDARD

We review de novo the district court's grant of summary judgment, and apply the same standard as applied by the district court under Fed.R.Civ.P. 56(c). *Hope v. International Brotherhood of Electrical Workers*, 785 F.2d 826, 828–29 (9th Cir. 1986). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Swayze v. United States*, 785 F.2d 715, 717 (9th Cir.1986). The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial. *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir.1978) (involving a pro se litigant), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979).

█ A prisoner may state a section 1983 claim under the eighth and fourteenth amendments against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury by another prisoner. *See e.g., Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir.1982); *Franklin v. Oregon*, 662 F.2d 1337, 1347 (9th Cir.1981) (and cases cited

*infra*). The "deliberate indifference" standard requires a finding of some degree of "individual culpability," but does not require an express intent to punish. *Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir.1985) (en banc), *petition for cert. filed sub nom, Crake v. Haygood*, 54 U.S. L.W. 3489 (U.S. Jan. 21, 1986) (No. 85–908). The standard does not require that the guard or official " 'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.' " *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.) (*quoting Vun Cannon v. Breed*, 391 F.Supp. 1371, 1374–75 (N.D. Cal.1975) ), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983).

## III

## ANALYSIS

The eighth and fourteenth amendments of the United States Constitution prohibit the infliction of "cruel and unusual" punishment. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 664–68, 97 S.Ct. 1401, 1408–11, 51 L.Ed.2d 711 (1977); *Haygood*, 769 F.2d at 1354. We have recognized that a prisoner may assert a valid cause of action under section 1983 against state prison officials where the prisoner has suffered "cruel and unusual" punishment. *See, e.g., id.* at 1354–55. *See also Whitley v. Albers*, —— U.S. ——, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). To violate this constitutional proscription, the "punishment must be incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' " *Haygood*, 769 F.2d at 1354 (*quoting Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)), "or must involve unnecessary or wanton pain disproportionate to the severity of the crime." *Id.* (*citing Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637 (1983) ).

A prison authority need not brandish a gun or employ a billy club to transgress the evolving standards of decency. History and precedent teach that the cruel and unusual punishments clause reaches other contexts, as well. *Ingraham*, 430 U.S. at 664–68, 97 S.Ct. at 1408–11. A prisoner may state a valid section 1983 claim (under the eighth and fourteenth amendments) against a prison official who was aware that the prisoner was seriously ill but ignored his request for assistance. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980). In these circumstances, the court will impose liability where the official acted with "deliberate indifference" to the prisoner's plight. *Estelle*, 429 U.S. at 104–06, 97 S.Ct. at 291–92; *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980). Although prison officials are ordinarily accorded "wide-ranging deference" in the administration of prisons, *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), " 'deliberate indifference to a prisoner's serious illness or injury,' . . . can typically be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff or other inmates." *Whitley*, 106 S.Ct. at 1084 (citation omitted).

But a prisoner will not always obtain recovery solely upon a showing of "deliberate indifference." Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions. *Bell*, 441 U.S. at 547, 99 S.Ct. at 1878. Courts often lack competence to evaluate fully prison administrative decisions. *Id.* at 547–48, 99 S.Ct. at 1878–79. *See generally Hudson v. Palmer*, 468 U.S. 517, ——, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). In certain situations—as when prison officials respond to an outbreak of violence—the "deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 106 S.Ct. at 1085. In these cases, liability involves a balancing of a number of factors, and turns upon " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) ). The Supreme Court has stated that deference to the decisions of prison officials also extends to "prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.*

■■■ Turning to Berg's allegations, we consider separately his claims against defendants Kincheloe, Steinbeck, Fleming and Iverson from those asserted against Marsh. As to the former defendants, Berg failed to demonstrate the existence of any evidence which would substantiate his allegations. He failed to come forward with facts showing that these defendants had any reason to believe he would be attacked by the assailant. *See, e.g., Porm v. White*, 762 F.2d 635, 638 (8th Cir.1985); *Walsh v. Brewer*, 733 F.2d 473, 477 (7th Cir.1984). *See generally Mosher*, 589 F.2d at 442 (involving a pro se litigant). Further, the evidence indicates that Berg's allegations of a "cover-up" are unfounded. Prison officials investigated the incident and delivered all physical evidence to the police (who are not defendants in this case). We find no evidence of "individual culpability," and summary judgment was appropriate as to defendants Kincheloe, Steinbeck, Fleming and Iverson.

■■ However, viewing the evidence in the light most favorable to Berg, we cannot say he has failed to present a genuine issue of material fact as to the liability of defendant Sergeant Marsh. Berg alleged he had been placed in the protective custody unit because his "life was in danger." He further alleged that he specifically told Marsh his life would be in danger if he reported to the tier porter job, but that Marsh ignored

that plea and ordered him to report to that job anyway; and that shortly thereafter, he was beaten and raped. Marsh did not present any supporting affidavit to refute Berg's allegations. Berg's pro se complaint, read liberally, states a prima facie cause of action against Marsh under the eighth and fourteenth amendments, and his complaint may not be dismissed "unless it appears certain that [he] can prove no set of facts which would entitle him ... to relief." *Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985). Berg has provided sufficient detail in his complaint and other pleadings to withstand Marsh's unsupported request for summary judgment. *See Watts v. Laurent,* 774 F.2d 168, 172–74 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

Berg's allegations with respect to defendant Marsh are analogous to a case in which a prisoner-patient seeks but is denied relief from an infirmity. *See, e.g., Estelle,* 429 U.S. 97, 97 S.Ct. 285. Here the danger comes not from the untreated disease, but the unprevented attack. The similarities between the two situations, as measured by the existence of warning and availability of redress, are obvious. As noted, in both cases, liability is measured by the "deliberate indifference" standard. *See, e.g., Hoptowit,* 682 F.2d at 1250; *Franklin,* 662 F.2d at 1347. *See also Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir.1985); *Porm,* 762 F.2d at 636–37.

We recognize, however, that, unlike the "medical emergency" case, a case involving an individual prisoner's safety from attacks by other prisoners may implicate "competing institutional concerns for the safety of prison staff or other inmates." *Whitley,* 106 S.Ct. at 1084. Removing a prisoner from a hostile or vengeful inmate may protect the prisoner, but the move may endanger others—particularly if the prisoner is himself dangerous. *See generally Marchesani v. McCune,* 531 F.2d 459, 462 (10th

Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); *Lee v. Carlson,* 564 F.Supp. 1048, 1053 (M.D.Pa.1983). Further, "[p]risons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often violent, conduct." *Hudson,* 468 U.S. at —, 104 S.Ct. at 3200. As the Tenth Circuit observed, "[m]any prisoners are unpredictable. [The] [p]rison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous." *Marchesani,* 531 F.2d at 462. *See also Riley,* 777 F.2d at 145–46; *McLaughlin v. Royster,* 346 F.Supp. 297, 312 (E.D.Va.1972).[1] Public "deliberate indifference" or manpower limitations may place constraints on the choices available to prison officials. *See Wright v. Rushen,* 642 F.2d 1129, 1134 (9th Cir.1981) (costs often constrain ability to act). In deciding how to protect a prisoner, officials may face a number of choices, each posing potential dangers to the prisoner and others. Choosing the optimal "prophylactic or preventive measures" to prevent violence and maintain safety is difficult and not readily susceptible to judicial evaluation. *Whitley,* 106 S.Ct. at 1085; *Bell,* 441 U.S. at 547–48, 99 S.Ct. at 1878–79; *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974) (recognizing the difficulties in "maintaining internal order").

The allegations in Berg's complaint illustrate some of these concerns. Berg stated he was placed in the protective custody unit because his "life was in danger," and he was sent to a job assignment in the protective custody unit. This suggests that in deciding how best to protect Berg, prison officials (Marsh included) may have been guided by considerations of safety to other inmates, or they may have made a practical judgment as to the best means of protecting Berg, given the inherent dangers of the prison environment. *See generally Martin v. White,* 742 F.2d 469, 475 (8th Cir.1984) (requiring not only a showing

---

1. In *McLaughlin,* the court stated: "In a penal institution there is always the danger of riots, or lesser disturbances, which may result in injuries to nonparticipants. This exists, probably, so long as each inmate is not confined behind bars at all hours." *Id.* at 312.

of "deliberate indifference" or reckless disregard of prisoner's safety, but also an unreasonable response by officials to the risk); *Lee,* 564 F.Supp. at 1053 (considerations of safety for others may affect decisions).

We believe that in applying the "deliberate indifference" standard in this particular context, the trier of fact (judge or jury) must take into account the foregoing considerations. Specifically, the trier must consider whether, in allegedly exposing the prisoner to danger, the defendant prison official(s) were guided by considerations of safety to other inmates, whether the official(s) took "prophylactic or preventive measures" to protect the prisoner, *Whitley,* 106 S.Ct. at 1085, and whether less dangerous alternatives were in fact available. More generally, the legal standard must not be applied to an idealized vision of prison life, but to the prison as it exists, and as prison official(s) are realistically capable of influencing. In short, the trier must consider context, as well as consequences. If the evidence only involves a "dispute over the ... existence of arguably superior alternatives," *id.,* at 1085–86, then the Supreme Court has indicated that the plaintiff has not met his burden and the case should not be presented to a jury. *Id.*

We recognize that a further airing of the evidence may indicate that at most Berg may only be able to prove an isolated incident of negligence for which he is not entitled to recovery from Marsh. *See Williams v. Field,* 416 F.2d 483, 485 (9th Cir. 1969) (also involving claim under equal protection), *cert. denied,* 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970).[2] Alternatively, the evidence may establish that Marsh acted with "deliberate indifference"

under the totality of the circumstances in this case when he compelled Berg to report to the tier porter job in the protective custody unit where he was beaten and raped.[3]

In deciding that the district court erred in granting Marsh's motion for summary judgment, we express no opinion as to whether Berg is entitled to a recovery under the "deliberate indifference" standard we have discussed. We hold only that summary judgment dismissing Berg's claim against Marsh at this stage of the proceedings was inappropriate.

AFFIRMED as to defendants Kincheloe, Steinberg, Fleming and Iverson. REVERSED as to defendant Marsh, and REMANDED.

---

2. *See also* 51 A.L.R. 3d § 8[a], at 157 (1973 & Supp. 1985).

3. *Williams* is consistent with our resolution of this case. There, we held that the plaintiff had failed to state a cause of action under the eighth amendment applying "three tests [that] have been used to determine whether the conduct complained of constitutes cruel and unusual punishment." *Id.* at 486. Specifically, we held that the plaintiff's complaint failed to indicate

that the defendants' actions "shock[ed] the conscience," or involved "punishment greatly disproportionate to the offense," or "beyond legitimate penal aims." *Id.* While Berg has also failed to state a cause of action under these three tests, we hold that he has stated a cause of action under the "deliberate indifference" standard enunciated by the Court in *Estelle,* 429 U.S. 97, 97 S.Ct. 285, which was decided after *Williams.*