990 F.2d 1259
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clara PAULISICH, and Pearlita Martinez, as Administrators of
the Estate of William Thomas Martinez, and
individually, Plaintiffs-Appellants,
v.
Bernie AISPURO, individually and as Warden of California
State Prison-Corcoran; Marv Meske, individually and as
Associate Warden of California State Prison-Corcoran;
Robert Christian, individually and as Corrections Officer of
California State Prison-Corcoran; James Zamora,
individually and as Corrections Officer of California State
Prison-Corcoran, Defendants-Appellees.
 No. 91-15939.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submission Deferred July 23, 1992.
Resubmitted Oct. 27, 1992.
Decided March 29, 1993.
 
 Before CANBY, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Pearlita Martinez and Carla Paulisich appeal the district court's summary judgment dismissal of their 42 U.S.C. § 1983 action for damages. Martinez and Paulisich (hereinafter "the family") are the wife and sister, respectively, of William Martinez, an inmate at the California State Prison in Corcoran who was shot and killed by a corrections officer during a fist fight with another inmate. The family filed this action for damages alleging that the acts of the prison authorities violated Martinez's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.
 
 DISCUSSION
 
 3
 The family argues that there are material issues of fact whether the correctional officers acted with deliberate indifference or reckless disregard of Martinez's rights by (1) allowing him to enter the exercise yard with an inmate who previously had attacked him, (2) using deadly force to stop Martinez from attacking that same inmate, and (3) failing to provide medical assistance immediately following the shooting. Pursuant to the authority of Whitley v. Albers, 475 U.S. 322 (1986), we will examine the conduct of the prison authorities to determine whether their treatment of Martinez was in violation of the Eighth Amendment. Id. at 327 ("[T]he Eighth Amendment ... serves as the primary source of substantive protection to convicted prisoners ... where the deliberate use of force is challenged as excessive and unjustified.").
 
 
 4
 It is settled law that a prisoner may assert a valid claim under section 1983 against prison authorities if he has suffered "cruel and unusual punishment." See, e.g., Hudson v. McMillian, 112 S.Ct. 995 (1992). Following incarceration, a governmental action is forbidden by the Eighth Amendment if it constitutes "unnecessary and wanton infliction of pain." Whitley, 475 U.S. at 319 (quotation omitted). Unnecessary and wanton infliction of pain must be alleged and proven with due deference given to the context in which it arises. Id. at 320; accord Hudson, 112 S.Ct. at 998. Thus, the requisite showing to establish an unnecessary and wanton infliction of pain will vary according to the nature of the alleged constitutional violation. Id. ("For example, the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference."). Accordingly, as we evaluate each of the family's alleged violations we will apply the particularized standard appropriate under the circumstances.
 
 I. Exposure to Unreasonable Risk of Harm
 
 5
 Initially, the family charges that there was no policy to separate the most dangerous Security Housing Unit ("SHU") inmates from other SHU inmates, and the adequacy of the "known enemy" policy was a question of fact. As a result of these allegedly defective procedures, the family contends correctional officers acted with reckless disregard for Martinez's safety on the day of the shooting when they put him in the exercise yard with inmate Lomeli. According to the family, Lomeli previously attacked Martinez on two occasions, had a record for fighting, and was classified as a member of a rival prison gang.
 
 
 6
 A prisoner may state a section 1983 claim under the Eighth and Fourteenth Amendments against prison authorities who act with deliberate indifference to the threat of serious harm or injury by another prisoner. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986). Deliberate indifference is evaluated in this context by considering "whether, in allegedly exposing the prisoner to danger, the defendant prison officials were guided by considerations of safety to other inmates, whether the officials took prophylactic or preventive measures to protect the prisoner, and whether less dangerous alternatives were in fact available." Id. at 462 (citation omitted). Although the standard--deliberate indifference--does not require an express intent to punish on the part of prison officials, "individual culpability" must be present. Id.
 
 
 7
 According to the affidavit of Ted Pruit, Program Administrator at Corcoran State Prison, known enemies were not released into the same yard together in the SHU. In accordance with prison policy, as stated in California State Prison at Corcoran, Operational Procedure Number 421, Inmate Classification Plan, an inmate's known enemies were documented on form CDC 812, which was continuously updated to reflect the current situation.
 
 
 8
 Pruit's affidavit says that when inmates were involved in fist fights, a prison official would talk with the inmates separately to determine whether the inmates felt they could be in the same exercise yard together in the future. If either inmate indicated he could not go into the same exercise yard, a change was made to assure the inmates were no longer in the same yard at the same time and they would no longer have contact. If there were repeated fist fights between two inmates, prison policy was to separate them, and perhaps even document them as known enemies, regardless of whether the inmates believed they could continue in the same exercise yard. If inmates were involved in a fight in which serious injury occurred or a weapon was used, the staff would always separate them and document them as known enemies.
 
 
 9
 Martinez's CDC 812 form was updated on March 16, 1989, three weeks prior to the fatal shooting. Lomeli was not listed as a known enemy. Although Lomeli and Martinez had a fist fight on March 26, 1989, there was no evidence that either inmate indicated after that incident that they could not go in the same yard together. Pruit testified that based on the prison staff's prior experience with inmates involved in non-injury fist fights, and the fact that Martinez and Lomeli did not consider each other enemies, there was no reason to believe the two could not continue to exercise together.
 
 
 10
 Martinez was clearly the aggressor on the day of the shooting, which makes it difficult for his family to maintain this claim. There is no evidence to suggest, nor does the family allege, that Martinez sought and was denied protection from Lomeli. According to the evidence before the district court, a policy was in place to protect prisoners in the SHU from known enemies. Additionally, the evidence supports the determination that prison officials acted pursuant to policy in their handling of Martinez. According to the uncontroverted evidence, an allegation that officials acted with deliberate indifference when they released Martinez into the exercise yard with Lomeli cannot be sustained. Summary judgment was appropriate on this issue.
 
 II. Malicious Application of Force
 
 11
 The family claims a reasonable jury could conclude that Officer Christian acted with deliberate disregard for Martinez's safety, therefore, summary judgment on that issue was inappropriate. They argue the evidence indicates that at the time Officer Christian fired the fatal shot Martinez already had begun to retreat from the fight. The family contends that, at a minimum, Officer Christian should have attempted to disable Martinez by shooting him in the lower extremities, and failure to do so violated prison policy concerning the use of deadly force.
 
 
 12
 Recently, the Supreme Court extended the application of the "unnecessary and wanton infliction of pain" standard, Whitley, 475 U.S. at 319, to all allegations of excessive force by a prison official. Hudson, 112 S.Ct. at 999. Thus, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. The relevant factors that must be considered are: (1) the extent of injury suffered by an inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by responsible officials, and (5) any efforts made to temper the severity of a forceful response." Id.
 
 
 13
 Here, the uncontradicted evidence established that on April 7, 1989, upon entering the exercise yard Martinez ran directly over to Lomeli and began hitting him. Officer Christian ordered both inmates to stop fighting, yet they continued to fight. Christian then fired a gas gun into the exercise yard in an attempt to stop the fighting, but the fighting continued. Once again Christian ordered both inmates to stop fighting. At that point, Lomeli fell face down to the ground and Martinez, who was wearing tennis shoes, began kicking at Lomeli's head, while Lomeli attempted to cover his face and head with his arms.
 
 
 14
 Christian indicated that he believed Lomeli could be seriously injured if Martinez continued to kick him in the head. In an attempt to stop the attack, Christian fired his rifle at Martinez, and says he aimed for his shoulder in an attempt to disable him. Christian stated that he did not aim low on Martinez for fear of hitting and injuring Lomeli who was still lying on the ground. Christian testified that he shot at Martinez as he was kicking Lomeli. We cannot tell from the video tape whether Martinez was kicking Lomeli. The family, however, has failed to come forward with any evidence that would tend to controvert Christian's testimony. Thus, we accept Officer Christian's testimony concerning the alleged kicking as undisputed.
 
 
 15
 According to Christian, after the fatal shot was fired, Martinez took two or three steps back and fell to the ground. Although it is impossible to determine from the tape recording of the event the exact point that the shot was fired, the video confirms Christian's statement that Martinez took two or three steps backward and fell. While the video tape is somewhat inconclusive, there is no evidence in the record tending to contradict Christian's account.
 
 
 16
 Department of Corrections section 3276(b) provides in relevant part that:
 
 
 17
 (b) Use of Firearms. The greatest of caution and conservative judgment shall be exercised when carrying and using firearms.
 
 
 18
 (1) Institution Use. In institutions where inmates or parolees are located, firearms shall only be used when absolutely necessary to prevent or stop ... physically assaultive behavior, ... or other disturbances and disorders which present an immediate danger of ... loss of life ... bodily injury....
 
 
 19
 (3) Last Resort. Firearms shall be used only as a last resort after other reasonable and available resources have been considered and exhausted or are determined to be clearly inappropriate in view of the immediate need to use armed force.
 
 
 20
 (5) Warnings. A warning shall be given before shots are aimed at a person acting in a less than an immediate life endangering manner. In institutions where inmates or parolees are located, such warning may be by display of the firearm and shouting or blowing a whistle, or firing a shot into the air or in another safe direction in keeping with the surroundings.
 
 
 21
 Unfortunately, the use of force in this case was quick and deadly. Nevertheless, the Eighth Amendment standard is a very high one, and difficult to meet in a disciplinary situation. Officer Christian complied with departmental regulations. Based upon his undisputed deposition and affidavit testimony and the portions of the video tape that corroborate his account, we conclude that all the evidence is to the effect that Officer Christian applied force in a good-faith effort to restore discipline, rather than maliciously and sadistically to cause harm. Summary judgment on this issue was appropriate.
 
 III. Deliberate Indifference to Medical Needs
 
 22
 The family contends that prison officials displayed deliberate indifference to Martinez's injuries by failing to provide immediate medical treatment following the shooting. They allege that Martinez lay bleeding on the ground while officials removed all other prisoners from the exercise yard. The family claims it was six to ten minutes before anyone attended to Martinez.
 
 
 23
 The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). The failure to meet this obligation will constitute a constitutional violation when the official's conduct is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106; accord Wood v. Housewright, 900 F.2d 1332 (9th Cir.1990). Prison officials manifest deliberate indifference to a prisoner's serious medical needs when they deny or delay access to medical care. Estelle, 97 U.S. at 104-05.
 
 
 24
 Approximately ten minutes elapsed following the shooting before Martinez was attended to. A jury could find that this was an unreasonable delay in tending to Martinez after he was shot, but would be obliged to find that no damages resulted from it. The uncontroverted affidavit of Dr. Dollinger states that Martinez's "death was nearly instantaneous; two to three minutes at the most." Under the evidence, summary judgment on this issue was appropriate.
 
 
 25
 The judgment of the district court is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3