35 F.3d 570
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lawrence S. BITTAKER, Plaintiff-Appellant,
v.
James GOMEZ, et al., Defendants-Appellees.
Lawrence S. BITTAKER, Plaintiff-Appellant,
v.
James ROWLAND, et al., Defendants-Appellees.
 Nos. 92-16912, 93-15173.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 14, 1994.*
Decided Sept. 8, 1994.
 
 Before: HUG, SCHROEDER and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Lawrence S. Bittaker appeals the district court's grant of summary judgment in favor of the defendants in his consolidated Sec. 1983 actions against several officials of the San Quentin State Prison, where plaintiff is incarcerated.
 
 
 3
 Between August 15, 1988, and March 13, 1990, plaintiff filed four separate civil rights actions in federal district court alleging numerous violations of his constitutional rights. After receiving submissions from both parties, the district court granted the defendants' motion for summary judgment on or dismissal of all of plaintiff's claims. We find, however, that there are disputed issues of material fact with respect to plaintiff's claims that he was improperly limited to 15 sheets of paper per week and that prison authorities improperly seized plaintiff's pin-up pictures in violation of his First Amendment and due process rights, requiring a reversal and remand as to those claims. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In all other respects we affirm the judgment of the district court.
 
 I. Seizure of Pin-up Pictures
 
 4
 Plaintiff complains that prison officials seized approximately 250 loose pin-up pictures from his cell in violation of his due process, equal protection, and First Amendment rights. The district court held that the prison officials reasonably concluded that defendant's pictures were a fire hazard, and therefore that the seizure was justified by legitimate security interests. See Turner v. Safley, 482 U.S. 78, 89 (1987) (prison regulations that impinge on the constitutional rights of prisoners valid if reasonably related to legitimate penological interests); Sullivan v. Ford, 609 F.2d 197, 198 (5th Cir.), cert. denied, 446 U.S. 969 (1980). Plaintiff contends, however, that the fire hazard rationale was a pretext, given the large number of other loose papers and magazine pages containing other subject matter that were not seized. In relation to another of plaintiff's claims, defendants themselves contend that plaintiff had in excess of 600 pieces of unused paper stockpiled in his cell. There is, therefore, a genuine issue of fact concerning the basis for defendant's actions, making summary judgment on this issue inappropriate.
 
 II. Access to Court
 
 5
 Plaintiff next argues that defendants impermissibly interfered with his access to court, by limiting him to 15 sheets of paper per week for a four-month period beginning in February 1989. Because of this limitation, plaintiff contends that his legal research and correspondence was impaired, and that he was unable to prepare at least one document for filing in a Marin County proceeding, a traverse to a response to an order to show cause. Plaintiff has therefore alleged that defendants actually impeded his access to court. Sands v. Lewis, 886 F.2d 1166 (9th Cir.1989).
 
 
 6
 In order to provide inmates with access to the courts, prison authorities are required to provide an adequate amount of paper, free of charge, to indigent defendants. Bounds v. Smith, 430 U.S. 817, 824-25 (1977). Defendants admit to limiting plaintiff's allocation of paper, but also contend that over 600 sheets of unused paper were found in plaintiff's cell on March 2, 1989, and that plaintiff would have been given more paper had he exhausted his existing supply. The state asserts that the limit was imposed in February 1989 because of the unused paper supply.
 
 
 7
 Plaintiff correctly notes that the prison report concerning the search and the discovery of 600 sheets of paper was not written until well after defendants decided to restrict plaintiff to 15 sheets per week, and further contends that despite his several administrative complaints regarding the paper restriction, defendants never mentioned this alleged stockpile of unused paper at the time. In addition, defendants' contention here is apparently inconsistent with their argument that plaintiff's 250 pin-up pictures were a fire hazard that had to be removed. Thus, summary judgment was improperly granted on this issue as well. We therefore reverse the district court's grant of summary judgment with respect to plaintiff's paper restriction claim and First Amendment claim based upon the seizure of his pin-up pictures, and remand for further proceedings.
 
 III. Disciplinary Proceedings
 
 8
 Plaintiff complains that he was subjected to four separate disciplinary proceedings, each of which deprived him of a protected liberty interest without due process. Plaintiff was cited for (1) possession of "escape paraphernalia" for sending a penpal a sketch and description of his surroundings; (2) abusing the copy service by having several documents copied on behalf of a non-indigent inmate in order to save the other inmate money; (3) possessing "dangerous contraband", a double-edged razor and a small homemade screwdriver; and (4) threatening the staff.
 
 
 9
 The district court dismissed plaintiff's claims based on the first, third and fourth of these proceedings, concluding that there was no constitutional violation. Plaintiff has not identified specific aspects of the grievance process which were inadequate. The district court correctly dismissed these claims.
 
 
 10
 With respect to incident number 2, the district court ordered plaintiff's complaint served on the defendants. After considering the contention of both sides, the district court correctly concluded that prison officials had provided plaintiff with an adequate hearing. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (all protections available in criminal prosecution need not be provided in disciplinary proceedings). In addition, the court correctly noted that no cognizable liberty interest was at stake because plaintiff was not disciplined for his conduct. Plaintiff urges that a liberty interest has nevertheless been impaired because if his conviction is reversed in habeas proceedings, prior disciplinary violations may affect terms of confinement that might be imposed after a second trial. Any such potential effects, however, are entirely too speculative to constitute a current deprivation of liberty, particularly given the minor nature of plaintiff's abuse of copy service.
 
 IV. Remaining Claims
 
 11
 Plaintiff's remaining contentions are without merit. Plaintiff first claims that his First Amendment rights were violated by a California Department of Corrections rule that required condemned inmates to obtain the approval of their appellate counsel before they could obtain direct access to the media. The district court properly dismissed this claim, however, because there is no evidence that the rule was unconstitutionally content-based, as plaintiff contends. The Department of Corrections merely made media interviews, regardless of subject matter, contingent upon the approval of a condemned inmate's attorney.[1]
 
 
 12
 Next, plaintiff contends that defendants failed to provide him with a safe exercise yard, thus effectively confining him to his cell for seven months in violation of the Eighth Amendment. Defendants held a hearing on April 23, 1987, to investigate a complaint that plaintiff had filed requesting that he be transferred to a different exercise yard. At the hearing, however, plaintiff would not specify why he felt unsafe or identify anyone who had threatened him.
 
 
 13
 On appeal, plaintiff contends that he had been threatened by nearly half the inmates assigned to the integrated exercise yard, and that he did not identify them because he either did not know their names or feared retaliation. However, the Eighth Amendment requires only that prison officials not be "deliberately indifferent" to the safety of their inmates. Berg v. Kincheloe, 794 F.2d 457, 459 (1986). Defendants in this case were not deliberately indifferent merely because they failed to transfer plaintiff to a different exercise yard when he had given them no concrete reason for doing so.
 
 
 14
 Plaintiff next argues that the defendants improperly denied him permission to correspond with Roy Norris, plaintiff's partner in crime and an inmate at a different institution; and Robert Lee Massie, a then-county jail prisoner who has since been transferred to San Quentin. Under prison regulations, prisoners must obtain permission from both wardens before they may correspond with inmates of other institutions.
 
 
 15
 With respect to Roy Norris, plaintiff contends that such interference significantly impaired his investigation and defense in his ongoing capital litigation, which was then in habeas proceedings, because Norris was plaintiff's codefendant and the only source of much important information. The district court concluded that the defendants' decision to deny this correspondence was justified by legitimate penological concerns, precisely because plaintiff and Norris were crime partners, and because defendants reasonably believed Norris to be a member of the Aryan Brotherhood prison gang. Turner v. Safley, 482 U.S. 78. The district court was correct. Although plaintiff challenges the accuracy of defendants' belief that Norris is an Aryan Brotherhood member, he has alleged no facts which cast doubt on the reasonableness of defendants' beliefs or actions at the time of his request for correspondence. Any infringement on plaintiff's defense was slight since plaintiff was free to try to contact Norris through his attorney, and this slight infringement was justified by legitimate security concerns. Turner, 482 U.S. at 89-90.
 
 
 16
 With respect to Robert Lee Massie, plaintiff does not indicate why any communication between the two was necessary or desired. Defendants contend that their denial of this correspondence was motivated by safety concerns, since Bittaker and Massie both had long histories of violent conduct, and prison officials feared that institutional safety could be threatened if the two were given an opportunity to conspire. Plaintiff has provided no basis for questioning that contention. The district court therefore correctly dismissed this claim on the grounds that defendants were acting reasonably and on the basis of legitimate safety concerns, especially given the lack of any asserted particular interest in corresponding with Massie.
 
 
 17
 Finally, plaintiff contends that his constitutional rights were violated because (1) defendants refused to exchange reading materials between prisoners housed in different tiers of the prison; (2) prison officials denied him access to tobacco, after providing it and thoroughly addicting him over a period of many years; and (3) he was served somewhat different meals than other prisoners, merely because he was not permitted to go to the mess hall. Because plaintiff has no statutory or inherent right to an exchange of reading materials with prisoners located elsewhere in the prison, free tobacco, or precisely the same meals provided in the mess hall, the district court properly dismissed each of these claims.
 
 
 18
 AFFIRMED IN PART and REVERSED AND REMANDED IN PART.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The rule has since been changed to allow condemned prisoners the same access to the media that non-condemned prisoners enjoy