James **WILKINS**, Plaintiff,

v.

Jack **DAVIS**, et al., Defendants.

No. S90–0093C.

United States District Court,
E.D. Missouri,
Southeastern Division.

Dec. 3, 1991.

James Earl Wilkins, pro se.

John F. Cooney, Evans & Dixon, St. Louis, Mo., for defendants.

**1.** Bradshaw was the chief jailer. The others were deputy sheriffs.

MEMORANDUM

LIMBAUGH, District Judge.

James Wilkins, an inmate of the Federal Correctional Institute in Memphis, Tennessee, brought this 42 U.S.C. § 1983 action against Jack Davis, sheriff of Pemiscot County, and sheriff's department employees, Bill Bradshaw, Joe Stegal, Rodney Ivie, and Charles Moss.[1] Wilkins was a federal pretrial detainee held at the Pemiscot County Jail in Caruthersville, Missouri, from December 14, 1989 to July 17, 1990. While at the jail, Wilkins was involved in two altercations with his cellmate. Plaintiff claims that defendants failed to take sufficient precautions to protect him from assault and failed to provide adequate medical care after the assaults. This cause is before the Court on defendants' motion for summary judgment.

I. *Standard for Summary Judgment*

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Mat-*

*sushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

▇ In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## II. *Facts*

At all times relevant to his complaint, plaintiff was a federal prisoner awaiting trial in the United States District Court for the Western District of Tennessee. Due to the overcrowded condition of the Shelby County, Tennessee, jail, the United States Marshal contracted with other facilities to hold certain pretrial detainees. Plaintiff was held at the Pemiscot County jail from December 14, 1989 to July 17, 1990. Plaintiff shared an eight-person cell at the jail with seven other pretrial detainees. One of them was Herbert Simmons, who had been in the same cell with plaintiff since plaintiff's arrival at the jail.

On March 27, 1990, plaintiff and Simmons "exchanged words" and an altercation followed. Plaintiff had no notice that Simmons would attack him and stated that it "just came out of the blue." Simmons struck plaintiff several times in the head and the face with his fist, and plaintiff struck him back several times. At one point, plaintiff's head struck an iron post on the bunk in his cell. No weapons were used. As a result, plaintiff sustained a "knot" on the left side of his forehead.

Defendant Rodney Ivie removed plaintiff from cell six. Plaintiff asserts that at that time he requested medical attention and transfer to a different cell, but defendants denied his requests. He alleges that defendant Charles Moss returned him to cell six. Plaintiff also claims that he contacted the United States Marshall's office, his lawyer, his family and his trial judge after the first assault to inform them of the incident. He says he wrote them of a laceration to his head sustained in the fight and of continuing head pain.

About a week later, on April 5, plaintiff was making some coffee in the cell and Simmons poured it down the commode. Plaintiff asked him about it and Simmons hit him. Plaintiff had no notice that Simmons would hit him. Plaintiff hit him back and a scuffle followed. At no time did plaintiff cry out for help. The other inmates in the cell attempted to break up the fight. The scuffle lasted about five to ten minutes, until defendants Bill Bradshaw and Joe Stegal came and ended it. There was some blood on plaintiff's nose and mouth.

Plaintiff was not taken to see a doctor after either altercation. Plaintiff again contacted the U.S. Marshall's office and his family. On April 13, plaintiff was moved from cell six. Between April 5 and April 13, he had no other altercations with Simmons. Nonetheless, he alleges that for three weeks, he was "living in constant fear for [his] life." Plaintiff also asserts that he wrote Davis after each altercation and requested to be moved from cell six.

Plaintiff took extra-strength pain medication purchased by a trustee from a nearby store from April 5, 1990 until June 16, 1990. He was examined by a physician on unrelated matters on June 16, 1990 and July 3, 1990. Medical records show that at those examinations plaintiff did not complain of any injuries sustained in the fights.

Defendants dispute that plaintiff ever asked to be moved from his cell. Each defendant submitted an affidavit stating

that he was never informed by plaintiff that he believed his safety was in danger, that he was not aware of any facts indicating a pervasive risk of harm, that plaintiff never requested medical care as a result of the altercations with Simmons, and that plaintiff never requested to be removed from his cell for protection from Simmons. Davis also states that he never received any letters from plaintiff. In response, plaintiff submitted the affidavits of two of his cellmates, William Johnson and James Crawford. The prisoners' affidavits state that they observed plaintiff objecting to his return to the cell after the first incident. They also state that they heard Moss, Stegal and Bradshaw deny Wilkins' request for medical treatment and for transfer to another cell. The Court will assume for purposes of this motion that plaintiff requested medical care and a cell transfer and defendants denied those requests.[2]

### III. *Discussion*

A. Failure to protect claim

■ At the time of his allegations, plaintiff was awaiting trial. A pretrial detainee is protected by the due process clause rather than the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). Due process prohibits punishment of persons prior to adjudication of guilty, however, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in a constitutional sense." *Id.* at 535–36, 99 S.Ct. at 1873. The Due Process Clause "protects pretrial detainees from both deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted." *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988) (citation omitted).

To sustain his claim that defendants failed to take sufficient precautions to protect him from assault, plaintiff "must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir.1991); *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.), *cert. denied*, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984); *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982). "To establish 'reckless disregard' by prison officials, an inmate must show that he was faced with a 'pervasive risk of harm' and that the prison officials failed to respond reasonably to that risk." *Andrews*, 929 F.2d at 1330 (citing *Bailey v. Wood*, 909 F.2d 1197, 1199 (8th Cir.1990); *Porm v. White*, 762 F.2d 635, 637 (1985)). A "pervasive risk of harm"

> may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution.... It is enough that violence and sexual assaults occur ... with sufficient frequency that prisoners ... are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures....

*Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984) (citations omitted).

Under these standards, the Court concludes that plaintiff has not shown that defendants recklessly disregarded, or were deliberately indifferent to, his right to be free from violent attacks by other inmates.

■ Plaintiff does not contend that Simmons' conduct while at the jail gave any indication that he posed a danger to plaintiff. Plaintiff himself admits that the first attack "came out of the blue" and that he had no notice of the second altercation. Plaintiff asserts that he requested to be moved after the first incident and for purposes of this motion the Court must assume he did. Nonetheless, this is not a case where there was a history over a considerable period of time of hostility and

---

2. Even assuming the facts as plaintiff alleges are true, plaintiff would not be entitled to judgment as a matter of law. Therefore, the Court does not consider these facts material.

violence by one inmate to another. During the first four months that plaintiff and Simmons shared a cell, there was no violence between them.

After four months, there was one incident in which plaintiff sustained a knot on the head. This injury is not so severe that a single isolated incident would indicate a pervasive risk of harm. Plaintiff did not allege that Simmons threatened him with future harm. In fact, plaintiff himself admitted that he had no notice of the second incident. It came about eight days after the first, when Simmons poured plaintiff's coffee down the commode and plaintiff confronted him about it. It seems that if plaintiff indeed felt as though Simmons was a threat to his life, then he would have chosen a course of action other than a confrontation. When Simmons hit him, plaintiff hit him back, rather than call out for help or take other action.

Plaintiff himself had no notice of the attacks by Simmons and nothing suggests that the jail officials would have known of a strong likelihood that Simmons would assault plaintiff again. The two altercations between plaintiff and Simmons were isolated incidents and did not present a "pervasive risk of harm." In view of all the circumstances, the jail officials did not "act with deliberate indifference or in reckless disregard of [plaintiff's] rights ..." *Bailey,* 909 F.2d at 1198. That conclusion is fortified by the fact after the April 5 incident, there was no further violence between them even though they remained in the same cell for more than a week after the coffee squabble.

**B. Failure to provide medical care claim**

■ A pretrial detainee is entitled to reasonable medical care unless the failure to provide it is reasonably related to a legitimate governmental objective. *See generally Green v. Baron,* 879 F.2d 305, 309 (8th Cir.1989); *see also Van Cleave v. United States,* 854 F.2d 82, 84 (5th Cir.1988).

■ Under this standard, the Court concludes that plaintiff has not shown that defendants failed to provide him with reasonable medical care. The injuries he sus-

tained in each of the two fights were minor, just a bump on the head and a bloody nose. He was supplied with pain medication. When later examined by a physician, plaintiff did not mention these injuries. In his response to defendants' motion he states that because he was not restricted from obtaining medication for his injuries, "he inadvertently omitted to inform the doctor." These facts show that plaintiff was not deprived of reasonable medical care.

For the foregoing reasons, defendants' motion for summary judgment will be granted.