**Renee C. PEREZ, Plaintiff,**

v.

**COZEN & O'CONNOR GROUP LONG TERM DISABILITY COVERAGE, an employee welfare benefit plan under Erisa, Defendant.**

**No. 05CV0440 DMS(AJB).**

United States District Court,
S.D. California.

Aug. 22, 2006.

Thomas M. Monson and Susan L. Horner of Miller Monson Peshel Polacek and Hoshaw, San Diego, CA, for Renee Perez, Plaintiff.

Robert Young, Jr. and A. Louis Dorny, Wilson, Elser, Moskowitz, Edelman & Dicker, Los Angeles, CA, for Cozen & O'Connor Group Long Term Disability Coverage, Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SABRAW, District Judge.

This matter comes before the Court on Plaintiff's motion for summary judgment. Defendant has filed an opposition to the motion, and Plaintiff has filed a reply. The matter came on for hearing on August 18, 2006. Susan Horner, Esq. appeared on behalf of Plaintiff, and A. Louis Dorny, Esq. appeared on behalf of Defendant. For the reasons set out below, the Court denies the motion.

### I.

### FACTUAL BACKGROUND [1]

Plaintiff Renee Perez is a former employee of the law firm Cozen & O'Connor. From January 13, 1997, through May 1998, Plaintiff worked as a litigation law clerk for the firm. (Def.'s Response to Pl.'s Statement of Facts in Supp. of Mot. for Summ. J. at ¶ 1.) After graduating from law school and taking the bar exam, Plain-

---

1. Both parties have requested that the Court consider extrinsic evidence in ruling on the present motion. Although the Court may consider "new evidence ... under certain circumstances to enable the full exercise of informed and independent judgment[.]" *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir.1995), the Court declines to address this issue at the present time because it will not affect the outcome of this motion. Rather, the Court will consider Defendant's request when ruling on Defendant's motion for leave to expand the record, which is currently scheduled for hearing on September 22, 2006. If Plaintiff wishes to expand the record, she may file a similar motion, or wait to file a motion *in limine.*

tiff began work as an associate attorney for the firm in mid-August 1998. (*Id.*)

In November 1998, about two weeks after returning from a trip to Peru, Plaintiff reported to an urgent care center with complaints of ongoing sinus congestion, coughing, sore throat, headaches, and significant exhaustion. (*Id.* at ¶ 5.) Plaintiff tested positive for streptococcus, and received some prescriptions. (*Id.*)

One week later, Plaintiff presented to Frank D. Gilman, M.D. for persistent headaches and fatigue. (*Id.* at ¶ 6.) Dr. Gilman ordered medical therapy and lab work. (*Id.*) The lab work revealed a low blood cell count and a positive mononucleosis screen. (*Id.* at ¶ 7.) Plaintiff repeated some of the lab work one month later, and it again reflected a low red blood cell count. (*Id.* at ¶ 8.)

Approximately one month later, on January 22, 1999, Plaintiff returned to Dr. Gilman, where she reported continued complaints of sore throat and chronic fatigue, as well as depression. (*Id.* at ¶ 9.) Dr. Gilman referred Plaintiff to an infectious disease specialist, Steven A. Gardner, M.D., and started Plaintiff on a trial of Zoloft. (*Id.* at ¶ 10.)

On January 27, 1999, Plaintiff presented to Dr. Gardner for a consultation. (*Id.* at ¶ 11.) The following day, Plaintiff had more lab work performed. (*Id.* at ¶ 13.) Those tests revealed Plaintiff's red blood cell count had returned to normal levels. (*Id.* at ¶ 14.)

Plaintiff returned to Dr. Gardner for a follow-up visit on February 3, 1999. (*Id.* at ¶ 15.) He noted Plaintiff's complaints "would fit the CDC criteria for chronic fatigue syndrome[,]" but that her complaints had not been present for six months, and thus he would not diagnose her with that condition. (*Id.*)[2] Two weeks later, after a follow-up visit with Plaintiff, Dr. Gardner stated Plaintiff's condition was consistent with CFS. (*Id.* at ¶ 17.) Dr. Gardner advised Plaintiff to follow up with Dr. Gilman. (*Id.*)

Plaintiff returned to Dr. Gilman on March 11, 1999. (*Id.* at ¶ 20.) On that date, Dr. Gilman certified to the U.S. Department of Education that Plaintiff was totally and permanently disabled from CFS. (*Id.* at ¶ 21.) On March 26, 1999, Dr. Gardner echoed that diagnosis, and stated Plaintiff would be unable to return to work. (*Id.* at ¶ 22.)

On July 15, 1999, Plaintiff applied for long-term disability benefits under Cozen & O'Connor's disability policy provided by Prudential (the "Policy"). (*Id.* at ¶ 25.) That Policy states an employee is totally disabled:

> when Prudential determines that all of these conditions are met:
>
> (1) Due to Sickness or accidental Injury, both of these are true:

---

**2.** The Centers for Disease Control and Prevention ("CDC") guidelines state chronic fatigue syndrome ("CFS") is defined by the presence of: (1) clinically evaluated, unexplained, persistent or relapsing chronic fatigue that is of new or definite onset (has not been life long), is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities; and (2) the concurrent occurrence of one or more of the following symptoms all of which must have persisted or recurred during six months of illness and must not have predated the fatigue: (a) self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities; (b) sore throat; (c) tender cervical or axillary lymph nodes; (d) muscle pain; (e) multi-joint pain without joint swelling or redness; (f) headaches of a new type, pattern, or severity; (g) unrefreshing sleep; and (h) postexertional malaise lasting more than twenty-four hours. (*Id.* at ¶ 18.)

(a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation. . . .

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

(Complaint, Ex. E at 17.) Prudential approved Plaintiff's claim for benefits on September 1, 1999. (*Id.* at ¶ 50.) In the letter approving Plaintiff's claim, Prudential advised Plaintiff she must apply for social security disability benefits, and that the amount of her long-term disability benefits would be offset by any amount received from social security. (*Id.* at ¶ 51.)

Plaintiff thereafter advised the Employment Development Department of California ("EDD") of her disability, and the EDD determined Plaintiff was entitled to benefits in the amount of $1,344.00 per month. (*Id.* at ¶¶ 52–53.) The Social Security Administration also approved Plaintiff's claim for benefits. (*Id.* at ¶ 75.)

Before approving Plaintiff's claim, however, Prudential scheduled Plaintiff for an independent medical exam ("IME") with Gonzalo R. Ballon–Landa, M.D. (Def.'s Response to Pl.'s Statement of Facts in Supp. of Mot. for Summ. J. at ¶ 44.) Plaintiff attended the IME with Dr. Ballon–Landa on September 15, 1999. (*Id.* at ¶ 56.) In his report, Dr. Ballon–Landa stated, "[b]ased on the history and the review of the records, it appears that the patient could not successfully perform her duties as an attorney." (Compl., Ex. F at 716–20.)

Approximately two years later, Plaintiff moved to Florida with her husband and infant son. Several months later, Prudential terminated Plaintiff's long-term disability benefits based on its finding that Plaintiff was no longer totally disabled under the Policy. (Def.'s Response to Pl.'s Statement of Facts in Supp. of Mot. for Summ. J. at ¶ 116.) Plaintiff notified Defendant of her intent to appeal this decision on March 18, 2002. (Compl., Ex. C.) In response to that notice, Defendant outlined its appeal procedures for Plaintiff. (*See* Compl., Ex. D.) Those procedures required Plaintiff to go through three levels of review. (*See id.*) Defendant informed Plaintiff that the third-level decision would be "final" and could not be appealed. (*Id.* at 1.)

Plaintiff filed her first formal appeal on January 23, 2003. (Def.'s Response to Pl.'s Statement of Facts in Supp. of Mot. for Summ. J. at ¶ 122.) In determining that appeal, Prudential sought an opinion from Dr. Amy Hopkins. (*Id.* at ¶ 124.) Prudential asked Dr. Hopkins to review Plaintiff's medical records and address the following questions: (1) Is there an impairment documented in the medical records? (2) If so, what effect on function would this impairment have? (3) What would be appropriate restrictions and limitations and for how long would they be applicable? (Compl., Ex. F at 920.) Dr. Hopkins prepared a report for Prudential dated March 2, 2003. (*Id.* at 921–22.) In that report, Dr. Hopkins states "[n]o physical impairment was objectively demonstrated in this record which would have precluded [Plaintiff] from [returning to work, full time], own or any occupation, no restrictions or limitations, after 5/31/02 or prior in the claim period." (*Id.* at 922.) Five days after Dr. Hopkins' report, Prudential denied Plaintiff's appeal. (Def.'s Response to Pl.'s Statement of Facts in Supp. of Mot. for Summ. J. at ¶ 131.)

On October 14, 2003, Plaintiff filed her second appeal with Prudential, which was denied on December 2, 2003. (*Id.* at ¶¶ 135, 137.)

On July 14, 2004, Plaintiff filed her third appeal with Prudential. (Compl., Ex. S.)

In reviewing that appeal, Prudential requested Plaintiff undergo a second IME. (Compl., Ex. W.) Plaintiff refused that request, and Prudential subsequently denied Plaintiff's appeal on August 30, 2004. (Compl., Ex. Y.) Plaintiff thereafter filed the Complaint in this case on March 4, 2005.

## II.

### DISCUSSION

In the present motion, Plaintiff asks the Court to make a finding, as a matter of law, that she is disabled under the Policy. Defendant argues there is a factual dispute on this issue that precludes the grant of summary judgment. It also asserts Plaintiff failed to exhaust her administrative remedies because she refused to undergo an IME.

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Exhaustion

As mentioned above, Defendant asks the Court to enter summary judgment in its favor as a result of Plaintiff's alleged failure to exhaust. Although a cross-motion for summary judgment is preferred, it may be appropriate for this Court to address Defendant's request here, especially because Plaintiff has had an opportunity to respond to Defendant's argument, both in her reply brief[3] and at oral argument. *See* 10A Charles A. Wright, *et al., Federal Practice and Procedure* § 2720 (3d ed.1998) (stating court should exercise "great care" to ensure moving party has opportunity to respond before granting summary judgment for non-moving party in absence of formal cross-motion). Accordingly, the Court turns, first, to the issue of exhaustion.

It is well-settled that plaintiffs in ERISA cases must exhaust administrative

---

**3.** Plaintiff requested, and the Court granted, leave to extend the page limit for the reply

brief so Plaintiff could address Defendant's belated request for judgment.

remedies prior to filing suit in federal court. *See Diaz v. United Agricultural Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir.1995); *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 (9th Cir.1991); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980) (announcing general rule that claimant must exhaust administrative remedies prior to bringing suit under ERISA in federal court). Here, Prudential set out its "appeal procedures" in its April 8, 2002 letter to Plaintiff's counsel. (Compl., Ex. D.) Those procedures required Plaintiff to go through three levels of review, at which time Prudential's decision would become "final." (*Id.*)

■ Plaintiff followed Prudential's procedures in this case, but Defendant argues Plaintiff has failed to exhaust her administrative remedies because she refused Prudential's request for a second IME. To support this argument. Defendant relies on the following language in the Policy: "Prudential, at its own expense, has the right to examine the person whose loss is the basis of claim. Prudential may do this when and as often as is reasonable while the claim is pending." (Compl., Ex. E at 37.) Contrary to Defendant's argument, however, this language does not establish a requirement that Plaintiff submit to an IME to exhaust her administrative remedies. Indeed, there is no mention of this alleged requirement in Prudential's explanation of its "appeal procedures." (*See* Compl., Ex. D.) Rather, Prudential stated Plaintiff need only complete the three levels of review, at which time Prudential's decision would become "final." (*Id.*) Plaintiff followed those procedures in this case, and thus she has exhausted her administrative remedies. Accordingly, Defendant's request for summary judgment on the issue of exhaustion is denied.

## C. Entitlement to Benefits

■ Turning to the issue of Plaintiff's disability, this Court has already indicated the appropriate standard of review in this case is *de novo*. Under *de novo* review, and on summary judgment, the issue for the court is whether there is a genuine issue of material fact surrounding the plaintiff's disability. *Newcomb v. Standard Ins. Co.*, 187 F.3d 1004, 1006 (9th Cir.1999).

As the moving party, Plaintiff bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Plaintiff appears to acknowledge that Dr. Hopkins' report raises a genuine issue of material fact in this case, but argues Dr. Hopkins' opinion is incomplete, unreliable, incredible, and irrelevant. However, this argument invites error as it asks the Court to make a credibility assessment. *See Dominguez–Curry v. Nevada Transportation Dept.*, 424 F.3d 1027, 1039 (9th Cir.2005) (stating "district court must refrain from making such credibility assessments on summary judgment.")

Nevertheless, Plaintiff persists she is entitled to summary judgment because the overwhelming majority of evidence supports a finding that she is disabled under the Policy. To support this argument, Plaintiff relies on *Newcomb*. That reliance, however, is misplaced. In *Newcomb*, the plaintiff brought a motion for summary judgment on the issue of his entitlement to benefits under a long-term disability policy. The district court, applying the abuse of discretion standard, agreed with the plaintiff and granted summary judgment. 187 F.3d at 1005. On appeal, the Ninth Circuit found the district court erred in applying the abuse of discretion standard of review, but declined to remand the case,

because it found the end result would have been the same even under a *de novo* standard of review. *Id.* at 1006. The court noted that judgment for the plaintiff would have been appropriate after a *Kearney*[4] trial because the district court made "factual findings" under Federal Rule of Civil Procedure 52 that would have been appropriate for such a trial. *Id.* at 1007. Such findings of fact supported the judgment below in favor of the plaintiff, and thus the Ninth Circuit fond "no practical purpose in remand[.]" *Id. Newcomb*, therefore, does not support Plaintiff's argument that she is entitled to summary judgment because the majority of evidence supports a finding of disability.

### III.

### CONCLUSION

In light of the above, the Court finds there are genuine issues of material fact in this case that prevent the Court from ruling, as a matter of law, that Plaintiff is entitled to long-term disability benefits under the Policy. Accordingly, Plaintiff's motion for summary judgment is denied.

**IT IS SO ORDERED.**

---

4. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.1999) (en banc), established that a bench trial on the administrative record is necessary when there is a genuine issue of material fact as to the plaintiff's disability.